2004 ME 20

**Larry MOODY**

v.

**STATE LIQUOR & LOTTERY COMMISSION.**

Supreme Judicial Court of Maine.

Submitted on briefs: Jan. 22, 2004.

Decided: Feb. 25, 2004.

Thomas F. Hallett, Thomas F. Hallett Law Offices, P.A., Portland, for plaintiff.

G. Steven Rowe, Attorney General, Michelle M. Robert, Asst. Attorney General, Augusta, for defendant.

Stephen E.F. Langsdorf, Preti Flaherty Beliveau Pachios & Haley, LLC, Augusta, for Scientific Games, Inc.

Panel: CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CLIFFORD, J.

[¶ 1] Larry Moody appeals from a judgment of the Superior Court (Cumberland County, *Crowley, J.*) dismissing Moody's complaint against the State Liquor and Lottery Commission pursuant to M.R. Civ. P. 12(b)(6). Moody contends that the Superior Court, in making its decision, erroneously considered extraneous information that was not included in the complaint. Moody also challenges the Superior Court's conclusion that his complaint failed as a matter of law because the contract between the parties was unambiguous. We disagree with Moody's contentions and affirm the judgment of the Superior Court.

## I. FACTUAL AND PROCEDURAL HISTORY

[¶ 2] Larry Moody submitted a Wild Card Cash lottery ticket to the Maine State Lottery and requested payment on what he claimed was a winning ticket. The directions on the ticket state: "Get a pair in any HAND, win PRIZE shown for that HAND. Use WILD CARD to make a pair in any HAND, win PRIZE shown for that HAND." There are six hands on the ticket, and when scratched, each hand reveals two boxes with numbers or letters in them that, if they match, create a winning pair. There is a separate scratch box labeled "wild card," that when scratched, reveals a number or a letter.

[¶ 3] None of the six hands on Moody's ticket made a pair.[1] The number revealed when Moody scratched the wild card box was a five, which did not match any of the numbers or letters in any of the hands. Moody contended that the common definition of a wild card permitted him to disregard the number five in the wild card box and allowed him to determine the value of the wild card. He chose the wild card to be a four or a six, which were the numbers in the hand positioned above the $20,000 prize.

[¶ 4] The State returned the ticket to Moody, explaining that the ticket was a nonwinning ticket, and if the game were played as Moody suggested, every ticket

---

1. The hands included a ten and an eight, a six and a four, an A and a three, a ten and a two, an eight and an A, and a K and a seven.

would be a winning ticket. In response, Moody filed suit, claiming breach of contract (Count I) and fraud (Count II). The State filed a motion to dismiss, pursuant to M.R. Civ. P. 12(b)(1) and (6).[2] The State contended that "[b]asic principles of contract interpretation dictate that plaintiff's interpretation of how the game is played is unreasonable as a matter of law so as to preclude liability."[3] The State submitted affidavits, a copy of the front and back of an unscratched Wild Card Cash ticket, and a copy of the Wild Card Cash rules and regulations along with its motion to dismiss.

[¶ 5] The Superior Court concluded that even assuming that the facts, as alleged by Moody, were true, the contract was unambiguous and "[b]y the terms of the 'contract' on the face of the ticket, Plaintiff's ticket was 'non-winning,'" and thus, the State had fully performed its obligations under the contract. The court also concluded that Moody's interpretation of the terms of the contract would lead to "the absurd and unintended result of every ticket being a winning-ticket," and defies common sense. Accordingly, the court dismissed Count I. Moody appeals from this dismissal.[4]

## II. DISCUSSION

### A. Consideration of Extraneous Documents in a Motion to Dismiss

[¶ 6] Moody contends that the Superior Court erred when it considered extraneous materials submitted by the State, including affidavits, an unscratched version of a Wild Card Cash ticket, and the rules and regulations for the game.[5] He asserts that by considering material not provided in the complaint, the court converted the motion to dismiss into a motion for a summary judgment. The State contends that the Superior Court properly considered the information the State attached to its motion to dismiss because the documents completed the entire contract that Moody brought into consideration and additionally, the items were matters of public record, which may be judicially noticed in a motion to dismiss.

[¶ 7] When we review the dismissal of a complaint, "we examine the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *In*

2. Although the State's motion was based, in part, on M.R. Civ. P. 12(b)(1), the court appears to have granted the State's motion on M.R. Civ. P. 12(b)(6) grounds only. Because the parties do not brief any issue related to M.R. Civ. P. 12(b)(1), we do not address M.R. Civ. P. 12(b)(1). M.R. Civ. P. 12(b) provides, in pertinent part:

> Every defense, in law or fact, to a claim for relief in any pleading ... shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted ....

3. The State also contended that its liability was limited, pursuant to the governing stat-

utes and rules, to replacement of the ticket or a refund of the sales price. The State does not pursue this argument on appeal.

4. The court also dismissed Count II after finding that although there was a question regarding whether Moody's notice of claim fell within the substantial compliance exception found in 14 M.R.S.A. § 8107(4) (2003), even if the notice was effective, the activities of the State Liquor and Lottery Commission do not fall within any of the exceptions to sovereign immunity. Moody did not appeal this dismissal.

5. Although Moody refers to the affidavits, it does not appear that the court relied on the affidavits, and the two affidavits that related to Count I do not raise facts material to the interpretation of the term "wild card."

*re Wage Payment Litig.*, 2000 ME 162, ¶ 3, 759 A.2d 217, 220. When a court decides a motion to dismiss made pursuant to M.R. Civ. P. 12(b)(6), "the material allegations of the complaint must be taken as admitted." *Livonia v. Town of Rome*, 1998 ME 39, ¶ 5, 707 A.2d 83, 85. "A dismissal should only occur when it appears 'beyond doubt that a plaintiff is entitled to no relief under any set of facts that he might prove in support of his claim.' " *McAfee v. Cole*, 637 A.2d 463, 465 (Me. 1994) (quoting *Hall v. Bd. of Envtl. Prot.*, 498 A.2d 260, 266 (Me.1985)).

[¶ 8] The general rule is that only the facts alleged in the complaint may be considered on a motion to dismiss and must be assumed as true. *See Flaherty v. Allstate Ins. Co.*, 2003 ME 72, ¶ 12, 822 A.2d 1159, 1164–65; *Napieralski v. Unity Church of Greater Portland*, 2002 ME 108, ¶ 4, 802 A.2d 391, 392. If a party brings a motion to dismiss and "the court considers appropriate materials outside the pleadings, the motion is treated as one for a summary judgment." *In re Magro*, 655 A.2d 341, 342 (Me.1995); M.R. Civ. P. 12(b) ("If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment ...."); *Beaucage v. City of Rockland*, 2000 ME 184, ¶ 5, 760 A.2d 1054, 1056 ("The filing of the affidavits converted the City's motion to dismiss into a motion for a summary judgment.").

[¶ 9] Federal courts, however, including the United States District Court for the District of Maine, and the First Circuit, have held that in some circumstances certain extraneous documents can be considered on a motion to dismiss without converting the motion to one for a summary judgment. *Nicholson v. Prudential Ins. Co. of Am.*, 235 F.Supp.2d 22, 26 n. 2 (D.Me.2003); *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33–34 (1st Cir.2001); *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 48 (2d Cir.1991); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196–97 (3d Cir.1993); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir.1999); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir.1997); *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir.1998).

[¶ 10] This narrow exception allows a court to consider official public documents, documents that are central to the plaintiff's claim, and documents referred to in the complaint, without converting a motion to dismiss into a motion for a summary judgment when the authenticity of such documents is not challenged. *Alternative Energy, Inc.*, 267 F.3d at 33. These documents will merge into the pleadings. *Id.* The purpose for this exception is that if courts could not consider these documents, "a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Pension Benefit Guar. Corp.*, 998 F.2d at 1196.

[¶ 11] The Third Circuit explained that the reason for the rule regarding converting motions to dismiss to motions for a summary judgment is to afford a plaintiff an opportunity to respond to new facts raised by the defendant. *Id.* If a document is referenced in the complaint, is central to a plaintiff's claim, or is a public document, the plaintiff should have notice of the contents. *See id.* at 1196–97. We agree with the above rationale provided by the federal courts and we conclude that official public documents, documents that are central to the plaintiff's claim, and documents referred to in the complaint may be properly considered on a motion to

dismiss without converting the motion to one for a summary judgment when the authenticity of such documents is not challenged.

### 1. The Front and Back Portions of the Unscratched Ticket

■ [¶ 12] In this case, Moody alleges a breach of contract.[6] Documents that contain the terms of the contract are central to Moody's claim. *See Alternative Energy, Inc.*, 267 F.3d at 34 (finding that the attached settlement agreement was referred to in the plaintiff's complaint and that the defendant's liability depended on the terms of the agreement); *Pension Benefit Guar. Corp.*, 998 F.2d at 1196 (concluding that consideration of an attached purchase and sale agreement was proper; the complaint was based on the contract and described some of its terms). In his complaint, Moody refers to the terms of the ticket, but failed to attach the back of a Wild Card Cash ticket, which includes the terms of the game. As the State notes, Moody has not challenged the authenticity of the front or back portion of the unscratched ticket that the State submitted with its motion to dismiss. Accordingly, the Superior Court properly considered the front and back portions of the unscratched ticket that the State attached to its motion to dismiss.

### 2. The Wild Card Cash Rules and Regulations

■ [¶ 13] States that have considered the question have uniformly held that when an individual purchases a lottery ticket, that person agrees to abide by the rules and regulations of the lottery, and those rules and regulations become part of the contract between the parties. *E.g., Brown*, 602 N.W.2d at 89–90; *Hair v. State*, 2 Cal.App.4th 321, 2 Cal.Rptr.2d 871, 874 (1991); *Thao v. Control Data Corp.*, 57 Wash.App. 802, 790 P.2d 1239, 1241 (1990). The purchaser of a Wild Card Cash ticket agrees that all tickets, transactions, and winners are subject to the rules and regulations promulgated by the "Maine State Lottery and State Law," and the terms of the rules and regulations became part of the contract between Moody and the State. *See Down East Energy Corp. v. RMR, Inc.*, 1997 ME 148, ¶ 10, 697 A.2d 417, 421 (stating that where a lease agreement incorporated the terms of a gasoline agreement, the gasoline agreement became part of the lease).

[¶ 14] Additionally, the rules adopted by the Liquor and Lottery Commission are public documents, 5 M.R.S.A. § 8056(3) (2002), having been promulgated pursuant to 8 M.R.S.A. § 374(1) (1997 & Supp.2003) and in accordance with the Maine Administrative Procedures Act, 5 M.R.S.A. §§ 8001–11008 (2002 & Supp.2003). Official public documents are properly considered on a motion to dismiss without converting the motion to one for a summary judgment. *Alternative Energy, Inc.*, 267 F.3d at 33. Accordingly, the Superior Court correctly considered the rules and regulations attached to the State's motion to dismiss.

### B. Sufficiency of Moody's Complaint

■ [¶ 15] Moody contends that the various interpretations of the meaning of a wild card render the contract ambiguous,

---

**6.** The parties do not address in any detail whether the purchase of a lottery ticket creates a contract between the State and the purchaser of the ticket. The majority of states have concluded that the relationship between a state and a lottery ticket holder is contractual, and that the proper purchase of a lottery ticket is an acceptance of an offer. *E.g., Brown v. State*, 230 Wis.2d 355, 602 N.W.2d 79, 88–89, 89 n. 12 (Ct.App.1999) (citing cases).

and therefore, the court erred in deciding the case on a motion to dismiss. In the alternative, Moody urges us to interpret the term "wild card" in accordance with what he asserts to be the "generally prevailing meaning" of the term, that is, that the holder of a wild card is free to determine the value of the card that is designated as the wild card. We disagree.

[¶ 16] The question of whether a contract is ambiguous, and if unambiguous, the interpretation of that contract, are questions of law and are reviewed de novo. *Acadia Ins. Co. v. Buck Constr. Co.*, 2000 ME 154, ¶ 8, 756 A.2d 515, 517; *Briggs v. Briggs*, 1998 ME 120, ¶ 6, 711 A.2d 1286, 1288. Language is ambiguous when "it is reasonably susceptible to different interpretations." *Acadia Ins. Co.*, 2000 ME 154, ¶ 9, 756 A.2d at 517.

[¶ 17] Moody's interpretation would make *every* Wild Card Cash ticket a winning ticket. Contracts are only ambiguous when they are "reasonably susceptible to different interpretations." *Id.* Moody's interpretation is not only unreasonable, it is frivolous.[7] It is clear from the back of the lottery ticket, where it states that the odds of winning are 1:3.59, that the State intended to include an element of chance when it created the Wild Card Cash game. An interpretation that removes the element of chance does not "effect the parties' intentions" and does

not consider "the subject matter, motive, and purpose of the agreement, as well as the object to be accomplished." *Handy Boat Serv., Inc. v. Prof'l Servs., Inc.*, 1998 ME 134, ¶ 7, 711 A.2d 1306, 1308. *See also State v. Bussiere*, 155 Me. 331, 154 A.2d 702, 705 (1959) ("[I]t is generally agreed among the authorities that there are three essential elements necessary to constitute a lottery: (1) prize, (2) chance, and (3) consideration.").

[¶ 18] Accordingly, the Superior Court correctly determined that the contract between the State and Moody is unambiguous. Because there is no ambiguity regarding whether Moody's ticket was a winner, as a matter of law, the State did not breach a duty to pay. *See Rivers v. Amato*, 2003 ME 87, ¶¶ 5, 10, 827 A.2d 827, 829–30. Without a breach, even when examining the complaint in the light most favorable to Moody, Moody's complaint fails to state a claim upon which relief may be granted.

The entry is:

Judgment affirmed.

---

7.  Moody's interpretation, that the purchaser of a scratch ticket can unilaterally determine the value of the wild card, would mean that a purchaser would not have to scratch or rub off the wild card spot. This interpretation directly conflicts with the concept of a scratch ticket lottery game.