STATE OF MAINE
CUMBERLAND, ss.



SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-04-703

Jay S. Geller, et al.,
            Plaintiff

                    v.                                    **ORDER**

David M. Banks Realty, Inc.
d/b/a RE/MAX By The Bay, et al.,
            Defendants

This case comes before the Court on Defendants' revised joint motion to dismiss Count X of Plaintiffs' complaint pursuant to M.R. Civ. P. 12(b)(6).

## FACTS

In the spring of 1999, Plaintiffs Jay S. Geller and Catherine E. Breen (collectively "the Gellers" or "Plaintiffs") decided to relocate their family to the Portland area. The Gellers engaged Defendants RE/MAX By the Bay ("RE/MAX"), David M. Banks ("Banks"), and Gordon T. Holmes, Jr. ("Holmes", and collectively "the Defendants") as buyer's brokers to assist them in finding a new home. During one of their trips to Maine, the Defendants showed the Gellers a lot of land in the Town of Falmouth known as Lot 5, Falmouth Ridges ("Lot 5"). RE/MAX, Banks, and Holmes were the selling brokers for Lot 5, and disclosed this fact to the Plaintiffs. Any sale of Lot 5, however, was subject to the condition that a particular company, Coleman Construction Company, Inc. ("Coleman"), be used for construction on the lot.

In the process of finalizing the contract for the lot and construction package, the Gellers questioned Holmes about Coleman's qualifications. In response, Holmes advised the Plaintiffs that Coleman was well qualified to serve

as the general contractor on their project, and that Coleman built fine quality homes within budget. Despite these statements, however, the Defendants were aware of, and failed to disclose, instances of Coleman's past incompetent work, mismanagement, unreliability, and inadequate supervision of various projects.

On or about September 15, 1999, the Gellers purchased Lot 5 and entered into a construction contract with Coleman. Had the Plaintiffs been aware of information withheld by the Defendants regarding Coleman's poor work on past projects, however, these transactions would never have been consummated.

The contract between the Plaintiffs and Coleman called for the Geller's new house to be completed by May of 2000. This fact notwithstanding, when the Gellers arrived in Maine in July of 2000, they found that their house was not yet in a livable condition. Despite further assurances from Coleman that work would soon wrap up, their house remained substantially incomplete even after the Plaintiffs finally moved in at the end of August.

By the fall of 2000 and into early 2001, Coleman no longer returned phone calls, did not come to the job site, had expended all funds available under the construction loan, and had ceased for all practical purposes to serve as the general contractor on the project. The Gellers were therefore required to spend significant time, money, and effort over the next 18 months to complete the work and to remedy numerous defects in the house caused by incompetent contractors and/or inadequate supervision by Coleman.

The Plaintiffs filed the present complaint on November 22, 2004. In Count X of their complaint, the Gellers allege that the Defendants knowingly and willfully communicated false material representations to the Gellers via interstate wire and/or mail with the intent to defraud. The Plaintiffs further

2

assert that these activities are indictable as wire and/or mail fraud under federal law. In addition, the Gellers allege that the Defendants repeatedly made these communications in the course of the project as to constitute a pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*

The Defendants filed the present motion to dismiss on March 29, 2005. Both the Plaintiffs' opposition and the Defendants' reply were timely filed.

## DISCUSSION

A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint. *See Brewer v. Hagemann,* 2001 ME 27, ¶ 4, 771 A.2d 1030, 1031. When reviewing a motion to dismiss, the material allegations of the complaint are accepted as true. *See Moody v. State Liquor & Lottery Comm'n,* 2004 ME 20, ¶ 7, 843 A.2d 43, 47. In ruling on a motion to dismiss, the court should "consider the material allegations of the complaint as admitted and review the complaint in the light most favorable to the plaintiffs to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiffs to relief pursuant to some legal theory." *Bussell v. City of Portland,* 1999 ME 103, ¶ 1, 731 A.2d 862. Dismissal for failure to state a claim is appropriate only where it appears beyond doubt that the plaintiff is entitled to no relief under any set of facts which he might prove in support of his claim. *See Dutil v. Burns,* 674 A.2d 910, 911 (Me. 1996). The legal sufficiency of a complaint is a question of law. *See Sargent v. Buckley,* 1997 ME 159, ¶ 10, 697 A.2d 1272, 1275. If, on a motion to dismiss, matters outside the pleadings are presented and considered by the court, the motion shall be treated as one for summary judgment. *See* M.R. Civ. P. 12(b).

3

The sole issue presently before the Court is whether or not the statute of limitations has run on the Plaintiffs' RICO claim. The Defendants begin by noting that the statute of limitations applicable to civil RICO claims is four years. *See Agency Holding Corp., et al. v. Malley-Duff & Assoc., Inc.* 483 U.S. 143, 156 (1987). In addition, the Defendants contend that, in light of subsequent opinions, the Supreme Court would either employ an "injury discovery" rule or an "injury occurrence" rule to determine when the period begins to run. *See Rotella v. Wood, et al.,* 528 U.S. 549, 554 & n.2 (2000).

In the present case, RE/MAX, Banks, and Holmes suggest that the Geller's RICO claim is time barred under both the injury occurrence rule as well as the more generous injury discovery rule. The Defendants assert that, according to the Complaint, the Gellers discovered their alleged injuries no later than the end of August 2000, at which time they claim the house was "nowhere near complete" and riddled with safety hazards. *See* Complaint ¶¶ 34-36. Since the Plaintiffs did not file the Complaint in this matter until November 2004, over four years after they knew of the injury of which they now complain, i.e., an incomplete and incompetently built house, their RICO claim is time barred as a matter of law.

In opposition, the Gellers agree that the injury discovery rule should apply in this case, but also assert that the doctrine of equitable tolling applies to suspend the running of the statute of limitations. The Plaintiffs contend that according to the doctrine of fraudulent concealment – which they characterize as a subset of equitable tolling – the statute of limitations is tolled "where a plaintiff has been injured by fraud and remains in ignorance of it without any fault or

want of diligence or care on his part". *Gonzalez v. United States*, 284 F.3d 281, 292 (1st Cir. 2002) (citations omitted). In the Gellers' view, the allegations in the Complaint show that the Defendants deliberately concealed material facts relating to Coleman's past problems and poor reputation, and that the Plaintiffs exercised due diligence to discover these facts but were unable to do so. *See* Complaint ¶¶ 12, 17, 22-29, 51-52. Indeed, the Gellers assert that no amount of diligence would have revealed that the Defendants concealed their prior knowledge of Coleman's inadequacies, as this fact was within the Defendants' exclusive control. Instead, it was only by chance that the Plaintiffs became aware of this fact through another of the Defendants' clients.

In reply, the Defendants state that although the Gellers purport to agree that the injury discovery rule applies to their case, they are actually advancing the "injury and pattern discovery" rule that the Supreme Court specifically rejected in *Rotella*. *See Rotella*, 528 U.S. at 554. According to the Defendants, the Plaintiffs do not argue that the problems with their home were concealed or could not have been discovered with the exercise of due diligence. Rather, the Gellers assert that they could not have with due diligence discovered the Defendants' prior knowledge of Coleman's inadequacies, which the Defendants were concealing. The Defendants suggest that the Gellers, therefore, are actually asserting that they did not discover the *pattern of racketeering activity* until a later time less than four years prior to the filing of the Complaint.

As alluded to by the Defendants, the Supreme Court was sharply critical of a rule that would couple the commencement of the statute of limitations for RICO claims with the discovery of the underlying pattern of prohibited activity. *See Id.* at 555. However, in disavowing the pattern discovery rule, the Supreme

Court also left open the possibility that "where a pattern remains obscure in the face of a plaintiff's diligence in seeking to identify it, equitable tolling may be one answer to the plaintiff's difficulty...". *Id.* at 561. The Plaintiffs here have seized upon the inherent ambiguity created by this statement in an attempt to breathe life into their claim. Although these concepts are not easily reconciled, and the situations in which the exception should be applied are not readily apparent, the Supreme Court did at least explicitly recognize that equitable tolling is "the exception, not the rule". *Id.* If the Court is to accept the Gellers' position, the exception would become the rule. According to the Complaint, the Defendants' repeated false material representations over wire and/or mail during the Gellers' transaction constitutes the operative pattern of objectionable activity. Moreover, the Gellers oppose this motion to dismiss on the grounds that the statute of limitations should be tolled because they could not with due diligence have discovered information that was not disclosed. The Gellers are thus asking the Court to delay the commencement of the limitations period because they were unable to discover the pattern of activity that caused their injury, as distinct from discovering the injury itself. In light of this unavoidable fact, and despite the seemingly contradictory language quoted above, the core holding of *Rotella* renouncing the pattern discovery rule must apply here, if it is to apply at all.

Since the allegations of the Complaint show that the Plaintiffs were aware of their injures by the end of August 2000 at the latest, even the more liberal discovery rule dictates that related RICO claims must have been filed by August 2004. Accordingly, since the present Complaint was not filed until November 2004, Count X is time barred as a matter of law.

Defendants' motion to dismiss Count X is hereby **GRANTED** and Count X of the Complaint is **DISMISSED**.

Dated _May 16, 2005_

_____
Justice, Superior Court

CAROL EISENBERG ESQ
PO BOX 9545
PORTLAND ME 04112

GEORGE LINGE ESQ
PO BOX 7320
PORTLAND ME 04112

ROY PIERCE ESQ
PO BOX 9546
PORTLAND ME 04112

STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  DOCKET NO. CV-04-703

Jay S. Geller, et al.,

                 Plaintiffs

                                                  ORDER ON PLAINTIFFS' MOTION
         v.                                       TO AMEND COMPLAINT

David M. Banks Realty, Inc.
d/b/a RE/MAX By the Bay, et al.,

                 Defendants.


This matter is before the court on Plaintiffs' Motion to Amend the Complaint.


## FACTS

Plaintiffs, Jay Geller and Catharine Breen (hereinafter "the Gellers" or "Plaintiffs") filed their initial Complaint with this court on November 22, 2004. The allegations made in the Complaint relate to a business relationship between the Gellers and the defendants, RE/MAX By the Bay, David M. Banks, and Gordon T. Holmes, Jr. (collectively "the defendants") wherein the Gellers hired the defendants to assist them in finding a new home in the Portland area. Count X of the original Complaint alleged that the defendants knowingly and willfully communicated false material representations to the Gellers via interstate wire and/or mail with the intent to defraud. Plaintiffs further asserted that these activities are indictable as wire and/or mail fraud under federal law. The Gellers also alleged that the defendants repeatedly made these communications in the course of the project as to constitute a pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq.

On March 21, 2005 the defendants filed a Motion to Dismiss Count X, arguing the Geller's RICO claim was barred by the statute of limitations. In their motion, the defendants argued that because the Gellers alleged that they discovered their injuries in August of 2000 but did not file their complaint until November 2004, Count X was barred under the applicable four-year statute of limitations. On May 12, 2005, the day before the court was to hear arguments on the Motion to Dismiss and the day before the Rule 16(a) Scheduling Order deadline for filing motions to amend the pleadings, the Gellers filed the instant Motion to Amend the Complaint. On May 16, 2005 this court entered an Order granting the defendants' Motion to Dismiss Count X, having concluded that the statute of limitations had indeed run. *See Geller, et al. v. David M. Banks Realty, Inc. d/b/a RE/MAX By the Bay, et al.*, CUMSC-CV-04-703 (Me. Super. Ct., Cum. Cty., May 16, 2005) (Cole, J.). In its order this court concluded that, based on the allegations contained in the initial Complaint, "the Plaintiffs were aware of their injuries by the end of August 2000 at the latest . . . ." Due to the late date of the filing of the Motion to Amend, the court did not consider the new allegations contained in the Plaintiffs' proposed amendment to Count X when it ruled on the defendants' Motion to Dismiss.

## DISCUSSION

Pursuant to M.R. Civ. P. 15(a), leave to amend a complaint "shall be freely given when justice so requires." Maine courts have interpreted Rule 15(A) liberally and take its mandate to mean "that if the moving party is not acting in bad faith or for delay, the motion will be granted in the absence of undue prejudice." *John W. Goodwin, Inc. v. Fox*, 642 A.2d 1339, 1340 (Me. 1994). In this case, the defendants have not argued that the motion to amend, if granted, would unduly prejudice them. Rather, they argue that, given this court's previous dismissal of Count X, the plaintiffs' Motion to Amend is "pointless." *See* Defs' Opp. to Pls.' Mot. to Dismiss at 1. The court, however, disagrees.

In this case, the plaintiffs' Motion to Amend was timely filed in that it was filed prior to the running of the deadline set out in the Scheduling Order. Additionally, it was filed prior to this court's order dismissing Count X as originally pled. Although the allegations made in Count X itself remain unchanged, the factual allegations that serve as the basis for that claim and that are incorporated into it appear to correct the deficiencies contained in the original Complaint, at least with respect to the date that the alleged injury was discovered. Under well-established procedural principles, "the admonition to allow amendment 'freely' still applies," even "[a]fter judgment on dismissal for failure to state a claim." 1 Field, McKusick & Wroth, *Maine Civil Practice* § 15.3 (2d ed. 1970. Accordingly, the court hereby GRANTS the plaintiffs' Motion to Amend the Complaint.

Dated ___Jun 21, 2005___

_____
Justice, Superior Court

_Holmes_

CAROL EISENBERG ESQ
PO BOX 9545
PORTLAND ME 04112

ROY PIERCE ESQ
PO BOX 9546
PORTLAND ME 04112

David Banks Realty
David Banks

GEORGE LINGE ESQ
PO BOX 7320
PORTLAND ME 04112

_Plaintiff_