STATE OF MAINE                                        SUPERIOR COURT

Sagadahoc, ss                                         Civil Action

INHABITANTS OF THE
TOWN OF WEST BATH,

                    Plaintiff

            v.                                        Docket No. CV-12-38

REGIONAL SCHOOL UNIT NO. 1,
ET AL.,

                    Defendants

## ORDER AFTER CONFERENCE OF COUNSEL

Counsel for the remaining parties—Town of West Bath, Regional School Unit No. 1, and the City of Bath—appeared in chambers November 17, 2014 for a conference of counsel regarding the proposed settlement of this case.

The key terms of the proposed settlement are outlined in e-mail correspondence that counsel shared with the court. However, the settlement is subject to consideration and approval by the Bath City Council, which is scheduled to take up the matter at its meeting December 3, 2014. The City administration and the City's legal counsel are recommending the proposal. In anticipation of the December 3 meeting, counsel for the parties will be working on settlement-related documents between now and then, so that, if settlement is approved, a stipulated docket entry can be filed within days of the approval.

Based on the foregoing, the court is postponing the trial scheduled to begin December 1, 2014. If the settlement is not approved, the court anticipates rescheduling the trial during January or February 2015.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this

Order by reference in the docket.

Dated: November 17, 2014

A. M. Horton
Justice, Superior Court

2

STATE OF MAINE                                    SUPERIOR COURT

Sagadahoc, ss                                     Civil Action
                                                  SAG-AMH-07-10-14

INHABITANTS OF THE
TOWN OF WEST BATH,

                          Plaintiff

                  v.                              Docket No. CV-12-38

REGIONAL SCHOOL UNIT NO. 1,
CITY OF BATH, INHABITANTS OF THE TOWN OF
ARROWSIC, and INHABITANTS OF THE TOWN OF
WOOLWICH,

                          Defendants

This matter came before the court on July 8, 2014 for a status conference with counsel to discuss the future course of events in this case. Following the court's order on the motions for summary judgment, the court must address the continuing obligations of each of the parties, ADR, discovery, and scheduling issues. As discussed with counsel, the court orders as follows:

1. **Towns of Arrowsic and Woolwich.** The Towns of Arrowsic and Woolwich have both moved to be excused from this case following the court's order granting summary judgment in their favor on West Bath's equitable claims. Arrowsic and Woolwich will remain parties to this case for purposes of West Bath's declaratory judgment claim. However, the court has ruled that West Bath cannot recover directly from the Towns of Arrowsic and Woolwich. At their request, counsel for Arrowsic and Woolwich are excused from participation in and attendance at all future proceedings in this case.

2. **Deadline for Mediation.** As discussed at the conference, the court is ordering the parties to attend mediation. The parties must complete mediation by September 15, 2014. The court reserves the right to order the parties to attend a judicial settlement conference if mediation is unsuccessful.

3. **Discovery Deadline.** Discovery will resume immediately. The deadline for discovery is November 1, 2014.

4. **Discovery Limits and Timing.** The City of Bath, RSU 1, and West Bath have all moved to increase the default limit of five depositions allowed under the discovery rules. The City of Bath and RSU 1 will be allowed a combined total of 15 depositions. West Bath will be allowed a total of 12 depositions. No more than 5 depositions may be taken by West Bath and no more than 5 may be taken by Defendants before mediation is completed.

5. **Conference of Counsel.** The clerk will schedule a conference of counsel to occur in October in Portland for the convenience of counsel and the court. The court will address final scheduling issues such as timing for the exchange of witness and exhibit lists and any remaining issues at this conference.

6. **Trial Dates.** This case is set for a bench trial on December 1-5, 2014. The parties shall provide the court with their proposed findings of fact and conclusions of law on the first day of trial.

7. **City of Bath's Motion for Reconsideration.** Counsel for the City of Bath has requested an enlargement of time to file a motion to reconsider the court's ruling on the issue of whether RSU 1 applied the proper cost-sharing formula during the four fiscal years in question. Bath's motion for reconsideration shall be filed by July 25, 2014. The court will notify plaintiff West Bath if a response to the motion is necessary.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated: July 10, 2014

A. M. Horton
Justice, Superior Court

STATE OF MAINE

Sagadahoc, ss.



INHABITANTS OF THE TOWN
OF WEST BATH
                    Plaintiff

v.                                          Civil Action Docket No. BATSC-CV-12-38

REGIONAL SCHOOL UNIT 1, et als.

                    Defendants

### ORDER ON MOTIONS

In this case, Plaintiff Inhabitants of the Town of West Bath ["West Bath"]

claims that Defendant Regional School Unit No. 1 ("RSU1") has incorrectly allocated

and assessed RSU's operating costs borne locally by West Bath and RSU1's other

participating municipalities.[1]   As a result of the error, which spans four fiscal years,

West Bath claims to have been assessed and to have paid over to RSU1 a total of about

$1.9 million more than it should have, had local costs been correctly calculated.   West

Bath seeks to recover the alleged overpayments from RSU1.   West Bath claims further

that the three municipal Defendants: Inhabitants of the Town of Arrowsic ("Arrowsic"),

Inhabitants of the Town of Woolwich ("Woolwich", and City of Bath ("Bath") were

assessed too little by the same total amount, and should reimburse West Bath in the

amount of their windfall.

The Defendants say in reply that West Bath has filed its claims too late, that it is

not the proper claimant, and that this is a wrong without any remedy.

---

[1]   Defendants do not concede that the wrong formula was used, but they do not argue that the
correct formula was used, during the four years at issue.   Nor do the Defendants deny West
Bath's assertion that the correct formula began to be used in 2012. In any event, this Order
takes West Bath's material allegations to be true for purposes of the Defendants' Rule 12(b)(6)
motions. *See* Discussion, I *Standard of Review, infra* p. 5.

1

All four Defendants have filed motions to dismiss West Bath's First Amended Complaint. Bath and RSU1 had previously filed motions to dismiss West Bath's initially filed Complaint. Additionally, West Bath has filed a Motion to Exclude directed to materials that Bath and RSU1 have filed with their motions to dismiss.

Oral argument on the then fully briefed motions was held May 7, 2013. A week later, on May 14, 2013, West Bath filed a Motion for Leave to File Second Amended Complaint, which the Defendants have opposed. The court has elected to defer ruling on all motions until briefing on West Bath's motion to amend was complete, and to decide West Bath's motion without oral argument. *See* M.R. Civ. P. 7(b)(7).

For the reasons stated herein, the court denies the several pending Motions to Dismiss, grants the Motion to Exclude, and grants the Motion for Leave to File Second Amended Complaint.

Factual And Procedural Background

RSU1 is a "regional school unit" as that term is defined in 20-A M.R.S. § 1, and is responsible for the operation of public schools in the municipalities of Arrowsic, Bath, Phippsburg, West Bath and Woolwich (all of which are referred to in RSU1's enabling legislation and hereinafter as "participating members").

RSU's enabling legislation, Private and Special Law 2007, Chapter 25, entitled "An Act to Permit Public Schools in the Lower Kennebec River Area to Regionalize To Achieve Efficiency and Improve Quality" (hereinafter "LD 910"), was enacted in September 2007. Pursuant to LD 910, the existing school administrative units of the five participating members were merged into and organized as a regional school unit as of July 1, 2008.

2

LD 910 includes a specific cost-sharing formula under which RSU1's "local costs" are to be allocated among the five participating members. Section 11 of LD 910 specifies that the "local costs" of operating RSU1 are to be allocated according to the formula in that section, rather than according to a statutory cost-sharing formula that applies generally to other school administrative units statewide.

The state statutory formula referred to in section 11 is codified in the 2005 Essential Programs and Services Funding Act, 20-A M.R.S. §§ 15670-15696 (2005), (the "EPS Act"). The EPS Act identifies "essential program services" [EPS], and provides for the costs of such services [EPS costs] to be allocated according to a formula codified at 20-A M.R.S. § 15688(3-A). However, all school administrative units also have costs outside those designated as EPS costs, and these so-called "over EPS costs" are also calculated and allocated within each school administrative unit.

Section 11 of LD 910[2] says that the section 15688(3-A) formula for allocating EPS costs does not apply, and that RSU1's "local costs" are to be allocated among the

---

[2] Section 11, of LD 910 states:

> **Sec. 11. Cost sharing; changes in cost sharing.** For the purpose of local cost sharing, the provisions of the Maine Revised Statutes, Title 20-A, section 15688, subsection 3-A do not apply to the participating members. The local costs of the district must be allocated to the participating members as follows:
>
> **1. Valuation.** One-third must be allocated based on the property fiscal capacity of each participating member;
>
> **2. Pupil count.** One-third must be allocated based on the most recent calendar year average pupil count of each participating member; and
>
> **3. Population.** One-third must be allocated based on the population of each participating member as determined by the latest Federal Decennial Census or Federal Estimated Census.
>
> In fiscal year 2008-09, the share of local costs that the district allocates to a participating member must be reduced by the amount of funds the participating member has transferred to the district pursuant to this Act to the extent the

participating members according to the formula specified in section 11. The term "local costs" is not defined, but the allocation formula in section 11 does not differentiate between EPS and over EPS costs.

It is undisputed that, before the commencement of every fiscal year since RSU1's formation, the budget for RSU1 has been prepared and initially approved by the RSU1 Board of Directors, and then subjected to an annual budget referendum held in each of the participating members. (Pl.'s Amend. Compl. ¶ 13.) Once the annual budget has been fully approved, RSU1 has applied a formula to calculate every participating member's share of the forthcoming fiscal year budget, and issued assessments to each of the five participating members in the amount of their calculated shares. Each municipality then raises the necessary funds, presumably through tax assessments against municipal taxpayers, and remits funds in the amount of the assessment to RSU1.

West Bath's First Amended Complaint alleges that RSU1 incorrectly allocated its local costs among the participating members for each of the four fiscal years within the period beginning July 1, 2008 and ending June 30, 2012. (Pl.'s Amend. Compl. ¶¶ 13, 21-29.) Specifically, West Bath alleges that RSU1 used the inapplicable statewide statutory formula in 20-A M.R.S. § 12688(3-A) to allocate RSU1's EPS costs, when it should have used the formula mandated by section 11 to allocate all local costs.

---

funds are not allocated to expenditures of the participating member.

> After 3 budget years, the district shall report to the joint standing committee of the Legislature having jurisdiction over education matters on its experience with determining the contributions of the participating members for local costs under this Act and on other methods of determining the contributions that might be preferable within the district. The other methods, if any, may include the results of a nonbinding election or as applicable town meeting votes in each participating municipality. The method of sharing the local costs of the district may be changed after the first 3 budget years of the district in the manner provided by the general laws, or, if the general laws at any time do not permit a change in cost sharing, by district referendum called by the board of directors.

4

(Pl.'s Amend. Compl. ¶¶ 21,23, 25, 27, 29.) As a result of this error, West Bath alleges, RSU1 overcharged West Bath a total of $1,919,380 in total local costs during the four fiscal years from 2008 through 2012. (Pl.'s Amend. Compl. ¶ 31; *see also id.* ¶¶ 22, 24. 26, 28, 29.) West Bath further alleges that on April 23, 2012 the RSU1 Board of Directors voted to correct this error prospectively and to use the formula mandated by LD 910 in allocating all local costs for the 2012-13 fiscal budget. (Pl.'s Amend. Compl. ¶ 32.

None of the foregoing is materially in dispute for purposes of the present motions. The Defendants do not appear to deny West Bath's contention that local costs were incorrectly allocated during the four budget years at issue.

The Defendants' motions to dismiss essentially make three arguments. First, the Defendants say that West Bath's claims are untimely, because West Bath was required to seek judicial review of each incorrect assessment within the 30-day deadline governing appeals of municipal action under M.R. Civ. P. 80B(b). Second, the Defendants say West Bath lacks standing to assert any of its claims because West Bath in its capacity of tax collector has not suffered any loss or legally cognizable injury sufficient to confer standing. Third, the Defendants say that this situation involves an alleged wrong without a remedy—they assert that there is nothing that can be done to reimburse West Bath for the overassessed amounts.

Discussion

I. *Standard of Review*

The purpose of a motion to dismiss is to test the legal sufficiency of the complaint. *McAfee v. Cole,* 637 A.2d 463, 465 (Me. 1994). The court examines "the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief

5

pursuant to some legal theory." *Id.* When testing the complaint under M.R. Civ. P. 12(b)(6), the material allegations of the complaint must be taken as admitted. *Id.* "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." *Johanson v. Dunnington*, 2001 ME 169, ¶ 5, 785 A.2d 1244. A motion to dismiss may raise a statute of limitations defense if, as is the case here, the facts giving rise to the defense appear on the face of the summons and complaint. *See State v. Milam*, 468 A.2d 620, 621 (Me. 1983).

West Bath's Motion to Exclude must be addressed as a threshold matter, because the outcome of that motion determines the extent to which the court will consider the extrinsic materials submitted by Bath and RSU1 with their motions.

II.    *Plaintiff's Motion To Exclude*

The general rule is that only the facts alleged in the complaint may be considered on a motion to dismiss. *See Moody v. State Liquor and Lottery Comm'n*, 2004 ME 20, ¶ 8, 843 A.2d 43, 47. However, Rule 12(b) states that "[i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." M.R. Civ. P. 12(b).

Whether the court accepts or excludes material outside the pleadings in deciding a Rule 12(b)(6) motion to dismiss is a discretionary determination. In this case, for the court to accept and consider Bath's 96 additional exhibits and RSU1's addendum, not to mention whatever additional materials West Bath would in fairness have to be given leave to file in response, would create a full-blown Rule 56 summary judgment process

6

replete with a voluminous record, without the benefit of the filings required by Rule 56 to help narrow or eliminate factual issues.

In their oppositions to Plaintiff's Motion to Exclude Exhibits, Bath and RSU1 correctly point out that Maine courts recognize an exception that "allows a court to consider official public documents, documents that are central to the plaintiff's claim, and documents referred to in the complaint, without converting a motion to dismiss into a motion for summary judgment when the authenticity of such documents is not challenged." *Moody v. State Liquor & Lottery Comm'n, supra,* 2004 ME 20 at ¶¶ 8-10, 843 A.2d at 47.

Be that as it may, the more than 100 exhibits that the City of Bath and RSU1 are asking the court to consider are too much freight for motions to dismiss to carry under the *Moody* exception. The court grants the Motion to Exclude, declines to consider the extrinsic material offered by Bath and RSU1 for purposes of their motions to dismiss, and limits review of all pending motions to dismiss to the face of the pleadings, including West Bath's proposed Second Amended Complaint. Even though that pleading is only a proposed pleading at this point, the court may consider it in the context of the Defendants' motions to dismiss, to determine whether the amendments reflected in the proposed Second Amended Complaint would be futile.

III.     *Defendants' Motions To Dismiss and Plaintiff's Proposed Second Amended Complaint*

In their motions to dismiss, the Defendants make three primary arguments. First, they say West Bath's claims are untimely under M.R. Civ. P. 80B. Second, they say West Bath lacks standing, and that any such claim has to be brought by West Bath taxpayers. Third, they say West Bath's claims must be dismissed because there is no available remedy for the overpayment. Each argument is addressed as follows:

7

*Defendants' Rule 80B Argument:* Defendants assert that West Bath's cause of action is governed by Rule 80B of the Maine Rules of Civil Procedure and, therefore, is untimely. Specifically, the Defendants assert that, although there is no statutory provision for review of RSU 1's assessments, judicial review was available, and was required to be sought within 30 days of when the assessments were made, under the provisions of Rule 80B(b), because the relief West Bath seeks was and is available by law in the nature of mandamus.

Maine Rule of Civil Procedure 80B(a) provides as follows:

> When review by the Superior Court, whether by appeal or otherwise, of any action or failure or refusal to act by a governmental agency, including any department, board, commission, or officer, is provided by statute or is otherwise available by law, proceedings for such review shall, except to the extent inconsistent with the provisions of a statute and except for a review of final agency action or the failure or refusal of an agency to act brought pursuant to 5 M.R.S.A. § 11001 et seq. of the Maine Administrative Procedure Act as provided by Rule 80C, be governed by these Rules of Civil Procedure as modified by this rule

M.R. Civ. P. 80B(a).

Because there is no statutory right of appeal in the case at bar, any review of RSU 1's cost allocation and budget assessments for the four fiscal years at issue must be "otherwise available by law" to fall within the rubric of Rule 80B. "Review is deemed 'otherwise available by law' if it is in the nature of that formerly available under the common law extraordinary writs, such as certiorari, mandamus or prohibition, adapted to current conditions." *Lyons v. Bd. of Dir. of Sch. Admin. Dist. No. 43*, 503 A.2d 233, 236 (Me. 1986).

At oral argument, on May 7, 2013, the court indicated that it leans in favor of the Defendants' position that review of RSU 1's budget assessment is and was, throughout the relevant period, available at least in the nature of the common law writ

8

of *mandamus*, if not the other extraordinary writs. *See Casco N. Bank, N.A. v. Bd. of Trs. of Van Buren Hosp. Dist.*, 601 A.2d 1085, 1087 (Me. 1992). Relief in the nature of that formerly available through a writ of mandamus is available in a Rule 80B action to compel a government agency or official to act, provided that the act sought to be compelled is ministerial, not discretionary, in nature. *See id., citing Ray v. Town of Camden*, 533 A.2d 912, 913 (Me.1987). In this case, LD 910 gives RSU1 no discretion in deciding which formula to use in allocating local costs among the participating members. Thus, West Bath could have invoked judicial review under Rule 80B, asking the court to vacate the incorrect assessments and to compel RSU1 to base its assessments upon the correct formula under LD 910.

Moreover, the court agrees with the Defendants that, because the erroneously calculated assessments came to an end with fiscal year 2011-12, which in turn ended June 30, 2012, and because the assessment for the current fiscal year is correct (and, it is hoped, will remain correct in future years), the declaratory judgment remedy invoked by West Bath for purposes of reviewing the validity of the assessments likely does not apply. The declaratory judgment remedy has a prospective focus, in that it typically addresses an ongoing justiciable controversy as to which the parties need guidance for the future. As the Law Court has noted, "a declaratory judgment action cannot be used to revive a cause of action that is otherwise barred by the passage of time." *Sold, Inc. v. Town of Gorham*, 2005 ME 24, ¶ 10, 868 A.2d 172, 176, citing *Cline v. Maine Coast Nordic*, 1999 ME 72, ¶ 13, 728 A.2d 686, 689. Moreover, the declaratory judgment statute does not enlarge or create jurisdiction. *See Hodgdon v. Campbell*, 411 A.2d 667, 671 (Me. 1980) ("declaratory judgment is a remedial device and does not enlarge the jurisdiction of the court.")

9

It is the fact that the dispute here is entirely confined to the past that distinguishes the case mainly relied on by West Bath to justify proceeding on a declaratory judgment basis, *Inhabitants of Stonington v. Inhabitants of Deer Isle*, 403 A.2d 1181 (Me. 1979). That case involved a continuing dispute over cost allocation, so, at least as to the plaintiff Town's request for declaratory and injunctive relief, there was no past final action to which the Rule 80B(b) deadline might apply. Whether the Town of Stonington could have recovered on its claim for reimbursement as to past years was an issue not reached by the Law Court; since each year involved a discrete budgeting and cost allocation process, it is entirely possible that the Town's claim for reimbursement might have been deemed barred, had the Law Court reached it.

However, the Law Court has recognized that the Rule 80B deadline is subject to a limited exception, under which the court may entertain a Rule 80B appeal filed after the deadline, when the delay is due to extraordinary circumstances: "The standard of excusable neglect is strict; extensions of time for filing notices of appeal should be limited to extraordinary cases. Further, when the neglect is that of the party charged to act, some 'extraordinary circumstance' must be proved to justify the neglect." *Haskell v. Phinney*, 460 A.2d 1354, 1360 (Me. 1983) (internal quotations and citations omitted).

Despite agreeing with much of the substance of the Defendants' Rule 80B argument, for several reasons the court does not agree with their conclusion that this action must be dismissed.

First, although West Bath has not alleged or otherwise pleaded "extraordinary circumstances" in its first Amended Complaint, there are allusions to circumstances that might be construed in that light, *see* Pl.'s Amend. Compl. ¶ 32. Moreover, West Bath's counsel during oral argument indicated that West Bath had made efforts to

10

investigate whether the correct formula was being used, and was given false or misleading information in response. Also, West Bath's recently filed Motion for Leave to File Second Amended Complaint does allege that the "extraordinary circumstances" exception to the Rule 80B deadline provision applies.

Second, the Defendants' premise that the entire case is subject to dismissal for failure to file within the Rule 80B(b) deadline is not necessarily correct. Not all of West Bath's claims would necessitate a Rule 80B review of the validity of RSU 1's assessments. Many of West Bath's claims in both the First Amended Complaint and the proposed Second Amended Complaint are equitable claims against the defendant municipalities rather than against RSU 1. Restitution based on unjust enrichment and/or mistake is clearly recognized as a cause of action.[3] For example, can West Bath obtain restitution based on unjust enrichment from the City of Bath without necessarily seeking to invalidate RSU 1's underlying assessments through Rule 80B review? At this early stage, the court is not prepared to answer that question in the negative. Thus, even were West Bath not alleging a basis for avoiding dismissal for failure to meet the Rule 80B(b) deadline, some of its claims would likely proceed at least to the point of surviving motions to dismiss.

*Defendants' Standing Argument:* The Defendants also argue that West Bath lacks standing because it simply acted as a tax collector and has not itself sustained any cognizable loss or injury, relying mainly on the Law Court decisions in *Town of Acton v. McGary*, 356 A.2d 700 (Me. 1976) and *Berry v. Daigle*, 322 A.2d 320 (Me. 1974).

---

[3] However, West Bath's claim for quantum meruit does not appear to fit. A quantum meruit claim is a claim for payment of the fair value of services, goods or something else of value rendered by the plaintiff to the defendant under circumstances that justify an expectation of payment. The concept of a quantum meruit claim in which the plaintiff seeks payment of money for a payment of money previously made does not really fit the theory. However, because it has not been challenged on this basis, the claim will be let stand for the time being.

11

However, those decisions do not lend the support to the Defendants' position that the Defendants assert.

The *McGary* case involved a challenge by municipalities and individual taxpayers to the constitutionality of the State property tax statute. The Law Court held that none of the plaintiffs had standing based on what was then the law of Maine: a tax paid voluntarily could not later be disputed or challenged. Thus, the individual taxpayers lacked standing to challenge the statute because they had paid the tax voluntarily. *See* 356 A.2d at 705. ("[R]egardless of whether the State property tax be constitutional or unconstitutional, plaintiffs Reed and Logan are not entitled to be repaid, in whole or in part, the monies voluntarily paid by them as taxes.") (citations omitted).

Similarly, as to the plaintiff municipalities, the court held that, because the individual taxpayers within the plaintiff municipalities had paid voluntarily and therefore would have no entitlement to any refund, "the plaintiff municipalities would thus have no justification to withhold the escrow monies from the Treasurer of State on the grounds that said monies should be paid back to the owners of the estates from whom the municipalities collected the monies . . " *Id.* at 707.

In 1981 the Maine Legislature effectively overruled the principle of law on which *McGary* depends by enacting 36 M.R.S. § 152: "A taxpayer may pay any tax, make any deposit or file any bond at any time without forfeiting any right to apply for a refund or an abatement or to seek review of the validity of the tax. No such tax, bond or deposit need be paid, filed or made under protest or under duress to entitle the taxpayer to apply for a refund or an abatement or to seek review of the validity of the tax."

The *McGary* case is thus no longer viable precedent, at least as far as the standing issue in the present case is concerned. Likewise, the decision in *Berry v. Daigle,*

12

322 A.2d 320 (Me. 1974), on which the Defendants also rely, rests in part on the same nugatory principle regarding voluntary payment: *See* 322 A.2d at 327 ("As the tax was not paid under legally cognizable duress, the Plaintiff has no entitlement to its refund, despite the possible merits of his case relative to the constitutionality of the repealed statute"). Section 152 plainly overrules the rule of law that a tax cannot be paid voluntarily, and must be paid under protest or duress, in order for the taxpayer to be able later to contest it.

A Law Court decision that is more relevant is the previously discussed opinion in *Inhabitants of Stonington v. Inhabitants of Deer Isle*, 403 A.2d 1181 (Me. 1979). The Town of Stonington, along with several individuals suing as taxpayers, sued to contest the cost-sharing arrangement between the Town and the Town of Deer Isle regarding costs of the Stonington-Deer Isle Community School District (CSD). Tellingly, the Law Court decided that it did not need to reach the individual taxpayer claims "[s]ince the Town of Stonington itself was a proper party plaintiff." 403 A.2d at 1181 n.1. Although the court did not explain why it deemed Stonington a proper plaintiff, it is obviously Stonington's status as a member of the CSD that confers standing.

Similarly, what gives West Bath standing for purposes of this case is its status as a member of RSU1, by virtue of LD 910 and, as applicable, the provisions of state law governing RSUs. *See* 20-A M.R.S. ch. 103-A (regional school units). As West Bath notes, the statute governing regional school units provides that member municipalities within an RSU are themselves liable to the RSU for failure to pay assessments, with the RSU having a right of action against a non-paying municipality and the court having jurisdiction to determine the amount due. *See* 20-A M.R.S. § 1489(6). In such a case,

13

the municipality, as the defendant, would obviously have standing to contest the RSU's assessment.

Thus, the fact that West Bath is a member of RSU 1 makes it more than just a tax collector, and renders irrelevant Defendants' argument that this case can only be pursued as a taxpayer suit, and only for preventive relief. This is not a taxpayer suit, nor does it need to be. This court is satisfied that under present law, West Bath has standing as a member of RSU 1 to assert the claims it asserts in both its amended complaint and its proposed Second Amended Complaint.

*Defendants' Argument About Lack of Any Remedy:* Defendants also suggest that the action should be dismissed because, in effect, this is a wrong without a remedy. For example, Defendants say that West Bath should not be allowed to seek reimbursement on behalf of its taxpayers because exact reimbursement cannot be achieved. Indeed, the universe of taxpayers from whom RSU 1 required West Bath to collect too much has certainly changed during the intervening years, so it may be impossible to issue refunds to all of those taxpayers, and only to those taxpayers, who were overassessed. However, the court doubts that such exactitude is required. Even if it is required, the Defendants, not being West Bath taxpayers themselves, may well lack standing to insist upon an exact reconciliation.

At this early stage of the case, the court is simply not prepared to accept the Defendants' premise that the case must be dismissed for lack of remedy.

*Plaintiff's Motion for Leave to File a Second Amended Complaint*

Under the liberal standard of Rule 15, Maine Rules of Civil Procedure, West Bath should be, and will be, given leave to amend in the form of its proposed Second Amended Complaint. Amendment would not be futile.

14

IT IS ORDERED AS FOLLOWS:

1.  Plaintiff's Motion to Exclude 96 Exhibits attached to Bath's Motion to Dismiss Plaintiff's First Amended Complaint is granted.

2.  Plaintiff's Motion for Leave to File Second Amended Complaint is granted. For purposes of setting a due date for responsive pleadings, the proposed Second Amended Complaint submitted with Plaintiff's Motion shall be deemed filed as of the date of docketing of this Order.

3.  The following motions are all denied:

   (a) RSU1's motion to dismiss filed November 19, 2012

   (b) RSU1's motion to dismiss filed February 13, 2013

   (c) City of Bath's Motion to Dismiss filed December 21, 2012

   (d) City of Bath's Motion to Dismiss filed February 22, 2013

   (e) Town of Woolwich's Motion to Dismiss filed February 21, 2013

   (f) Town of Arrowsic's Motion to Dismiss filed February 19, 2013

4.  The Clerk will schedule a conference of counsel at which a schedule for the case will be discussed and set. Meanwhile, given that the action has been pending for some time, discovery by any available means shall proceed on all issues as to which discovery is appropriate.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated June 7, 2013

_____
A. M. Horton
Justice, Superior Court

15

INHABITANTS OF THE TOWN OF WEST BATH - PLAINTIFF

Attorney for: INHABITANTS OF THE TOWN OF WEST BATH
SALLY DAGGETT - RETAINED
JENSEN BAIRD ET AL
10 FREE STREET
PO BOX 4510
PORTLAND ME 04112


vs
REGIONAL SCHOOL UNIT NO 1 - DEFENDANT
34 WING FARM PARKWAY
BATH ME 04530
Attorney for: REGIONAL SCHOOL UNIT NO 1
MELISSA HEWEY - RETAINED 11/19/2012
DRUMMOND WOODSUM
84 MARGINAL WAY SUITE 600
PORTLAND ME 04101-2480

Attorney for: REGIONAL SCHOOL UNIT NO 1
DAVID KALLIN - RETAINED
DRUMMOND WOODSUM
84 MARGINAL WAY SUITE 600
PORTLAND ME 04101-2480

INHABITANTS OF THE TOWN OF ARROWSIC - DEFENDANT

Attorney for: INHABITANTS OF THE TOWN OF ARROWSIC
RUFUS BROWN - RETAINED
BROWN & BURKE
PO BOX 7530
PORTLAND ME 04112-7530

INHABITANTS OF THE TOWN OF WOOLWICH - DEFENDANT
13 NEQUASSET ROAD
WOOLWICH ME 04579
Attorney for: INHABITANTS OF THE TOWN OF WOOLWICH
KRISTIN MCHENRY COLLINS - RETAINED
KELLY & ASSOCIATES, LLC
96 HIGH ST
BELFAST ME 04915

CITY OF BATH - INTERVENOR
55 FRONT STREET
BATH ME 04530

Attorney for: CITY OF BATH
DAVID RAY - RETAINED 01/08/2013
BERNSTEIN SHUR SAWYER & NELSON
100 MIDDLE ST
PO BOX 9729
PORTLAND ME 04104-5029

Attorney for: CITY OF BATH
TRAVIS MARTAY BRENNAN - RETAINED

BERNSTEIN SHUR SAWYER & NELSON
100 MIDDLE ST
PO BOX 9729
PORTLAND ME 04104-5029

Filing Document: COMPLAINT
Filing Date: 10/10/2012

SUPERIOR COURT
SAGADAHOC, ss.
Docket No   BATSC-CV-2012-00038

DOCKET RECORD

Minor Case Type: DECLARATORY JUDGMENT