MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:     2017 ME 17
Docket:       Cum-15-256
Argued:       March 1, 2016
Decided:      January 26, 2017

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, and JABAR, JJ.
Majority:     SAUFLEY, C.J., and MEAD and GORMAN, JJ.
Dissent:      ALEXANDER and JABAR, JJ.

ESTATE OF MERRILL P. ROBBINS

v.

CHEBEAGUE & CUMBERLAND LAND TRUST et al.


SAUFLEY, C.J.

[¶1]  The appeal in this matter requires us to determine whether a private owner of land encumbered by a conservation easement may bring a lawsuit seeking the enforcement of the easement on other land that is not owned by that landowner and in which the landowner has no other legal interest.  Here, the Estate of Merrill P. Robbins appeals from a judgment of the Superior Court (Cumberland County, *Mills, J.*) dismissing for lack of standing[1] the Estate's complaint seeking declaratory and injunctive relief and damages

---

[1]  The court's judgment was alternatively based on its conclusion that the matter was not ripe for judicial determination.  Because the Estate's claims are ripe now that the Land Trust has formally stated its approval of the proposed use, we need not review the court's determination on that matter.  *See Reg'l Rail Reorganization Act Cases*, 419 U.S. 102, 140 (1974) (holding that, because the issue of ripeness "is peculiarly a question of timing, it is the situation now rather than the situation at the time of the [trial court's] decision that must govern").

based on the decision of the Chebeague & Cumberland Land Trust—the holder of a conservation easement—to allow the Town of Cumberland, which also owns land subject to the easement, to develop its land for public recreational use. Except with respect to the Estate's breach of contract claim, we agree with the Superior Court that the Estate lacks standing, and we affirm the dismissal.

## I. BACKGROUND

[¶2] The following facts derive from the Estate's complaint, the deed of the conservation easement at issue, and other public documents presented on appeal, the authenticity of which was not challenged on appeal.[2] In 1997, Marion B. Payson, acting by and through her attorney-in-fact Merrill P. Robbins, created a conservation easement by deed. The Chebeague & Cumberland Land Trust is the current holder of the easement as the successor to the original grantee, Cumberland Mainland and Islands Trust, Inc. The land impressed with the easement comprises roughly 100 acres of land on the coast in Cumberland, referred to as "the Property" throughout the deed

---

[2] As an exception to the general rule that a court may consider only the pleadings on a motion to dismiss, *see Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶¶ 8-9, 843 A.2d 43, courts may consider "official public documents, documents that are central to the plaintiff's claim, and documents referred to in the complaint" in ruling on a motion to dismiss "without converting a motion to dismiss into a motion for a summary judgment when the authenticity of such documents is not challenged," *id.* ¶ 10.

of the easement. The conservation easement's stated purpose is to retain the Property "predominantly in its scenic, natural, and open space condition for conservation purposes and to prevent any use of the Property that will significantly impair or interfere with the conservation values of the Property and the Property's natural resources and associated ecosystems." This statement of purpose is consistent with the statutory requirement that "[a] conservation easement . . . include a statement of the conservation purposes of the easement, the conservation attributes associated with the real property and the benefit to the general public intended to be served by the restriction on uses of the real property subject to the conservation easement." 33 M.R.S. § 477-A(1) (2016).

[¶3] The deed also specifically noted the importance of the easement holder's primary purpose to "promot[e] *for the benefit of the general public* the preservation of natural resources in the Town of Cumberland and County of Cumberland, including land and water resources, the plant and animal life thereon, and unique scenic, natural, and historic sites." (Emphasis added.) Again, this purpose comports with the requirements of Maine law that a conservation easement must inure to "the benefit [of] the general public." *Id.*

[¶4]  Following several conveyances of sections of the original parcel, the Estate now owns only a portion of the original 100 acres of land subject to the conservation easement.  The Town of Cumberland has purchased another part of the 100 acres, which it acquired after the easement was created, and a real estate developer has acquired other land subject to the easement.

[¶5]  The Town has received conditional approval from the Cumberland Planning Board to allow the use of its property for a public beach.  The Town plans to construct a parking lot, resurface the existing access road with reclaimed asphalt, relocate an existing bath house, and add portable toilets.

[¶6]  As holder of the conservation easement and successor to the grantee named in the deed, the Land Trust is, by the easement's terms, primarily responsible for enforcing the terms of the easement.  *See also* 33 M.R.S. § 478(1)(B) (2016).  The Land Trust has determined, and has informed the Town, that the Town's plans are permitted under the terms of the conservation easement.  Although the Land Trust concluded that the proposed changes would expand public use of the Property, which would have "impacts on the land, the shore and the water," the Land Trust stated that its goal was to achieve balance between resource protection and increased public access to the land.

[¶7]  The Estate, although not an owner of the land at issue, communicated to the Land Trust and the Town its concerns that the Town's plan did not comply with the terms of the conservation easement and that the Land Trust was violating its obligations as holder of the easement.  On December 18, 2014, the Estate filed a complaint in the Superior Court naming the Land Trust and the Town as defendants.  The four-count complaint sought a declaratory judgment, injunctive relief, and damages and costs, and included a breach of contract claim against the Land Trust.

[¶8]  Upon the Town's and the Land Trust's motions to dismiss pursuant to M.R. Civ. P. 12(b)(6), the court dismissed the Estate's complaint in its entirety, concluding that the Estate lacked standing to initiate an action to enforce the conservation easement as it relates to the Town's property.  The court interpreted the statutorily provided grant of standing, which applies to "[a]n owner of an interest in *the* real property burdened by the easement," 33 M.R.S. § 478(1)(A) (2016) (emphasis added), to be limited to the owner of an interest in the real property that may actually be subject to development or another use allegedly inconsistent with the terms of the conservation easement.  The court concluded that, in this context, the statutory language does not include owners of other unrelated property that happens to be

6

burdened by the same easement. The court further concluded that the Estate was not authorized to sue by virtue of any "special interest" standing and that the deed of the conservation easement did not authorize enforcement by one property holder against another. The Estate timely appealed.[3]

## II. DISCUSSION

[¶9] The question presented is whether landowners with no ownership or other rights to land on which a use is proposed may seek a judicial determination of whether the proposed use on that land is permitted by the terms of a conservation easement. The Estate contends that it has standing to bring a claim to enforce the terms of the conservation easement as to the Town's land pursuant to the plain language of section 478(1) because the Estate owns an interest in real property that is also burdened by the easement, even if the dispute does not concern a use proposed on the Estate's property. *See* 33 M.R.S. § 478(1)(A).

[¶10] Unless a party has standing to sue, that party's complaint is properly dismissed. *See, e.g.*, *Nevin v. Union Tr. Co.*, 1999 ME 47, ¶¶ 41-42, 726 A.2d 694. Standing, in this context, is fully addressed by the statute. The laws

---

[3] Maine Farmland Trust, Inc., filed an amicus brief, and although the Attorney General also filed an amicus brief with our leave, *see* M.R. App. P. 9(e)(1), she has not intervened in the action and is not a party, *see* 33 M.R.S. § 478(1)(D) (2016).

codified at 33 M.R.S. §§ 476 to 479-C (2016) apply to the conservation easement, *see* 33 M.R.S. § 479-A(1); P.L. 1985, ch. 395, § 3 (effective Sept. 19, 1985), and we look to section 478(1) to determine standing. That statute specifies who may initiate or intervene in an action affecting a conservation easement:

> **1. Action or intervention.** An action affecting a conservation easement may be brought or intervened in by:
>
> **A.** An owner of an interest in the real property burdened by the easement;
>
> **B.** A holder of the easement;
>
> **C.** A person having a 3rd-party right of enforcement; or
>
> **D.** The Attorney General; except that the Attorney General may initiate action seeking enforcement of a conservation easement only when the parties designated as having the right to do so under the terms of the conservation easement:
>
> > **(1)** Are no longer in legal existence;
> >
> > **(2)** Are bankrupt or insolvent;
> >
> > **(3)** Cannot be contacted after reasonable diligence to do so; or
> >
> > **(4)** After 90 days' prior written notice by the Attorney General of the nature of the asserted failure, have failed to take reasonable actions to bring about compliance with the conservation easement.

33 M.R.S. § 478(1).

[¶11]  We review de novo the interpretation of a statute.  *See Strout v. Cent. Me. Med. Ctr.*, 2014 ME 77, ¶ 10, 94 A.3d 786.  "In construing a statute our duty is to give effect to the intent of the Legislature as evidenced by the language of the statute."  *Concord Gen. Mut. Ins. Co. v. Patrons-Oxford Mut. Ins. Co.*, 411 A.2d 1017, 1020 (Me. 1980).  "We will construe a statute based on its plain meaning in the context of the statutory scheme, and only if the statute is ambiguous will we look to extrinsic indicia of legislative intent such as relevant legislative history."  *Strout*, 2014 ME 77, ¶ 10, 94 A.3d 786 (quotation marks omitted).

A.     "An Action Affecting a Conservation Easement"

[¶12]  We begin with the question of whether each count of the Estate's complaint is "[a]n action affecting a conservation easement."   33 M.R.S. § 478(1).  The Estate alleged causes of action against the Town and the Land Trust for declaratory relief, statutory enforcement, and injunctive relief.  It further alleged a breach of contract by the Land Trust.  Based on these claims, the Estate sought the following remedies in its complaint: declaratory and injunctive relief, damages, and costs.

[¶13]    Based  on  the  plain  meaning  of  "[a]n  action  affecting  a conservation  easement,"  *id.*,  we  conclude  that  all  causes  of  action,  except

potentially the breach of contract claim asserted against the Land Trust, affect the Land Trust's conservation easement. Any injunctive, declaratory, or enforcement relief would directly affect the scope, meaning, and administration of the easement deed's terms. Accordingly, 33 M.R.S. § 478(1) applies to these claims.

[¶14] With respect to the breach of contract claim, however, it is not clear from the complaint whether the contract allegedly breached was the easement contract itself. *See Windham Land Tr. v. Jeffords*, 2009 ME 29, ¶ 16, 967 A.2d 690 (stating that a conservation easement is a contract between a landowner and the easement holder). The complaint and record materials available at this early stage in the proceedings indicate that the Estate is the successor in title to Marion B. Payson; that Payson entered into a contract with Cumberland Mainland and Islands Trust, Inc. (CMIT); that the Land Trust is the successor to CMIT; and that the Land Trust, "[i]n agreeing to hold the Conservation Easement . . . represented that it would enforce the restrictions contained therein."

[¶15] On this record, we cannot say that the Estate, claiming to be a successor in interest to the contract, has no standing to sue the Trust, which is also a successor. The record at this stage is insufficient for us to identify with

precision what agreement the Estate alleges has been breached. Any remedy in the nature of specific performance related to enforcement of the easement would be precluded, however, because it would be "[a]n action affecting a conservation easement" as discussed below. *See* 33 M.R.S. § 478(1).

[¶16]  Accordingly, although all other counts of the Estate's complaint are unambiguously "action[s] affecting a conservation easement," for which the statute governs standing, *see id.*, we cannot determine that the contract claim—which may be based on one or more agreements not yet clarified at this stage—is an action affecting the easement. Based on the broad language of the complaint, and given that Maine is a notice-pleading state, *see* M.R. Civ. P. 8(a); *Marshall v. Town of Dexter*, 2015 ME 135, ¶ 1 n.1, 125 A.3d 1141, dismissal of the contract claim is not appropriate at this time. The remaining question is whether section 478(1) confers standing on the Estate to pursue the other claims.

B.    Authorization to Sue Pursuant to Section 478(1)

[¶17]  Proceeding then to the statutory list of potential plaintiffs in actions affecting a conservation easement, there are four classifications of parties that have standing. It is evident that the Estate does not have standing as the *holder* of the easement because the Trust is the holder, *see* 33 M.R.S.

§§ 476(2), 478(1)(B); as the Attorney General, *see id.* § 478(1)(D);[4] or as a third party that has, by contract or otherwise, obtained a right of enforcement, *see id.* § 478(1)(C).[5]

[¶18]  Thus, the question on appeal is limited to whether "[a]n owner of an interest in *the* real property burdened by the easement," *id.* § 478(1)(A) (emphasis added), includes the Estate, which does not own an interest in the Town-owned parcel on which enforcement is sought but does own an interest in land that is also burdened by the conservation easement.

[¶19]  Because section 478(1)(A) can be interpreted in different ways, it is ambiguous regarding whether "[a]n owner of an interest in *the* real property burdened by the easement," *id.* (emphasis added), means an owner of *any* real property burdened by the easement or instead means an owner of the real property, burdened by the easement, upon which an enforcement

---

[4]  The Attorney General would have standing to sue if the Land Trust, as the party designated as having the right to sue under the terms of the conservation easement, became unable to do so because it (1) was no longer in legal existence, (2) became bankrupt or insolvent, (3) could not be contacted with reasonable diligence, or (4) "failed to take reasonable actions to bring about compliance with the conservation easement" within ninety days after "written notice by the Attorney General of the nature of the asserted failure."  33 M.R.S. § 478(1)(D).  There is no allegation in this matter, however, that any of these circumstances exist.

[5]  The complaint contains no allegation that any third party has, by contract or otherwise, obtained a right of enforcement.  *See id.* § 478(1)(C) (2016).

12

issue has arisen.[6]  *See Estate of Joyce v. Commercial Welding Co.*, 2012 ME 62, ¶ 12, 55 A.3d 411 ("A statute is ambiguous if it is reasonably susceptible to different interpretations.").

[¶20]  The ambiguity of the statute is squarely presented in this appeal, in which the Estate owns property "burdened by the easement," 33 M.R.S. § 478(1)(A), but asserts standing to enforce the conservation easement against another landowner by bringing claims that would ordinarily be asserted by a person or entity that is *benefitted* by the easement.  *See* Peter M. Morrisette, *Conservation Easements and the Public Good: Preserving the Environment on Private Lands*, 41 Nat. Resources J. 373, 381 (2001) ("[T]he benefit is not tied to any specific piece of property; rather, the benefit accrues to the land trust or organization that holds the easement.").

---

[6]  A leading treatise on property law states as follows about the Uniform Act's language concerning landowner standing, which the Maine Legislature adopted:

> The Uniform Act provides that an action affecting a conservation easement may be brought by four categories of plaintiffs.  The first is the owner of an interest in the real property burdened by the easement.  While an owner might be motivated to terminate or modify the restrictions, in most circumstances enforcement would be against the fee owner's interests.  An exception might be the possibility of litigation between tenants in common, if one disapproved of activities by another which violated the conservation easement.  Similarly there might be a dispute between the owner of the fee and a tenant, or between a life tenant and the holder of a remainder.

4 *Powell on Real Property* § 34A.03[4] (2015) (footnote omitted); *see* Unif. Conservation Easement Act § 3(a)(1) (1981), 12 U.L.A. 165, 184 (2008); 33 M.R.S. § 478(1)(A) (2016).  The author appears to assume that the language refers only to the real property upon which an enforcement issue has arisen.

[¶21]  To resolve the ambiguity in the statutory language, the Superior Court applied the rules of statutory construction and reviewed the legislative history of the provision, interpreting the statute *not* to confer blanket standing on owners of property subject to a conservation easement to enforce the easement against each other.  As the court correctly observed, to the extent that "[a]n owner of an interest in the real property burdened by the easement," 33 M.R.S. § 478(1)(A), was authorized to bring suit by the uniform act that Maine's Legislature adopted,[7] *see* Unif. Conservation Easement Act (1981), 12 U.L.A. 165 (2008 & Supp. 2016), such authorization was for the purpose of allowing the landowner to "sue in cases where the easements also impose duties upon holders and these duties are breached by the holders,"[8] Unif. Conservation Easement Act § 3 cmt., 12 U.L.A. at 185 (2008).  Regarding the filing of suit to enforce restrictions on landowners' use of burdened properties, the comments identified "[h]olders and persons having third-party

---

[7]  The legislative committee that recommended adopting the Maine legislation considered the 1981 Uniform Conservation Easement Act and its accompanying comments from the National Conference of Commissioners of Uniform State Laws.  *An Act to Adopt the Uniform Conservation Easement Act: Hearing on L.D. 1737 Before the J. Standing Committee on Judiciary*, 112th Legis. (1985) (*Uniform Conservation Easement Act: Synopsis*, prepared by Davis Hartwell, Esq.).

[8]  For example, by the terms of the deed establishing the conservation easement at issue in this matter, the holder "represents that it will manage access in and to" a trail on the property, which would be used by the public, and the deed sets out specific management requirements.  An owner of the land containing that trail may wish to bring suit if the Land Trust fails to manage trail access as required by the deed.  Conversely, the deed grants to the Land Trust the "[a]ffirmative [r]ight[]" to enforce the easement; it is not described as a duty.

rights of enforcement" as the entities with standing. *Id.* Thus, the Uniform Act would identify the Land Trust, as the holder of the easement, as having standing to enforce the easement. The Uniform Act also recognizes that a state might adopt language to confer standing on, for instance, the Attorney General. *Id.*

[¶22] In 2007, the Maine Legislature did just that. *See* P.L. 2007, ch. 412, § 5 (effective Sept. 20, 2007) (codified at 33 M.R.S. § 478(1)(D)). Although originally proposed to simply add the Attorney General as a party with standing, *see* L.D. 1737, § 6 (123d Legis. 2007), the Legislature ultimately adopted a statute that authorizes the Attorney General to enforce the terms of a conservation easement only in limited circumstances, P.L. 2007, ch. 412, § 5 (codified at 33 M.R.S. § 478(1)(D)), manifesting an intention not to extensively expand the scope of standing to litigate over conservation easements, *see* Sen. Amend. B to Comm. Amend. A to L.D. 1737, No. S-305 Summary at 3 (123d Legis. 2007) (stating that the amendment "specifies under what circumstances the Attorney General may initiate action seeking enforcement of a conservation easement").

[¶23] Although Maine's statute gives limited standing to the Attorney General, other states' statutes may confer standing upon "private attorney[s]

general," *Sierra Club v. Morton*, 405 U.S. 727, 737-38 (1972), whereby individuals are empowered to advance the public interest, *see, e.g.*, 765 Ill. Comp. Stat. Ann. 120/4(c) (LEXIS through P.A. 99-904) (authorizing enforcement of a conservation right by "the owner of *any* real property abutting or within 500 feet of the real property subject to the conservation right" (emphasis added)). As the Superior Court stated: "Maine's law explicitly empowers the Attorney General, as a representative of the public, with the backup authority to enforce the terms of a conservation easement in the event that the holder fails to fulfill its duties."

[¶24] We agree with the court that the limitations on enforcement by the Attorney General support the conclusion that the Legislature did not intend to authorize actions by *private* attorneys general. In addition to the legislative materials summarized and considered by the Superior Court, extrinsic evidence of legislative intent properly includes "preenactment history, including circumstances and events leading up to a bill's introduction." 2A Norman J. Singer & Shambie Singer, *Statutes and Statutory Construction* § 48:1 at 548-50 (7th ed. 2014); *see generally id.* § 48:3 at 561-73. In the instant matter, a review of the history of conservation easements and their intended purposes illuminates the issue of to whom the

Legislature intended to give standing to commence lawsuits to enforce the terms of an easement.

[¶25] "The conservation easement is a creature of statute, not the common law." Morrisette at 380; *see also* 4 *Powell on Real Property* § 34A.01 (2015). Before the advent of the conservation easement, common law servitudes—including traditional easements—were used to secure rights in land for the public interest. Morrisette at 380. *See generally* 4 *Powell on Real Property* § 34A.02[1] (discussing federal highway and scenic easements created in the 1930s, 1940s, and 1950s); William H. Whyte, Jr., *Securing Open Space for Urban America: Conservation Easements*, Urban Land Inst.–Tech. Bulletin, no. 36, Dec. 1959, at 11-14 (discussing scenic easements, right-of-way easements, airport easements, and easements for water control). These common law servitudes were not without limitations in the area of conservation. *See* Morrisette at 380-84.

[¶26] In 1959, the Urban Land Institute published a technical bulletin authored by William H. Whyte, who argued that "conservation easement[s]," Whyte at 8, should be used to secure open spaces in an urbanizing America. *See generally* Whyte. Because conservation easements are an extension of the law of eminent domain, *id.* at 7, "the purpose [of the easement] must be public,"

*id.* at 15. Whyte argued that conservation easements would advance numerous public benefits, including watershed protection, agricultural land conservation, limited recreational use, control of urban sprawl, and the reservation of future options for the use of those open spaces that are protected. *Id.* at 16-19.

[¶27] In 1981, the National Conference of Commissioners on Uniform State Laws approved and recommended for widespread enactment the Uniform Conservation Easement Act (UCEA). *See* Unif. Conservation Easement Act, 12 U.L.A. 165 (2008). The UCEA did away with many limitations that would otherwise be present pursuant to the common law. *See* Unif. Conservation Easement Act § 4 & cmt., 12 U.L.A. at 187-88. In 1985, the Maine Legislature adopted the UCEA, *see* P.L. 1985, ch. 395 § 3 (effective Sept. 19, 1985), with modifications, *compare, e.g.*, 33 M.R.S. § 476(1) (2016), *with* Unif. Conservation Easement Act § 1(1), 12 U.L.A. at 174. Consistent with the national movement, Maine's definition of a conservation easement requires a conservation easement to advance public benefits. *See* 33 M.R.S. § 477-A(1) ("A conservation easement executed on or after the effective date of this section must include a statement of the conservation purposes of the easement, the conservation attributes associated with the real property and

the *benefit to the general public* intended to be served by the restriction on uses of the real property subject to the conservation easement." (emphasis added)); *see also id*. § 476(1) ("'Conservation easement' means a nonpossessory interest of a holder in real property imposing limitations or affirmative obligations *the purposes of which include retaining or protecting natural, scenic or open space values of real property; assuring its availability for agricultural, forest, recreational or open space use; protecting natural resources; or maintaining or enhancing air or water quality of real property*." (emphasis added)).

[¶28]  Considering this history, had the Legislature intended, in enacting section 478(1), for a broader group of private citizens to have standing to enforce conservation easements upon land that they do not own, it would have said so much more clearly.[9]

[¶29]  Here, the use approved by the Land Trust is intended to provide public access over municipal property to one of Maine's most important

---

[9] Such broader access to litigation could permit individuals to thwart the public purposes of a conservation tool and instead use that tool to advance their own private interests. Private-attorney-general standing "could allow neighbors to extract a private benefit (namely, the continuation of an easement arrangement that only serves the personal goals of neighbors), when the purpose of the easement, the overall conservation easement authorization, and the federal and state tax subsidies is to benefit the public."  Gerald Korngold, *Governmental Conservation Easements: A Means to Advance Efficiency, Freedom from Coercion, Flexibility, and Democracy*, 78 Brooklyn L. Rev. 467, 500 (2013).

natural resources—the coastal waterfront. The Land Trust has determined this use to be consistent with the purposes of the conservation easement, and although other landowners may disagree with making the identified land accessible to the public, the Land Trust—not a private landowner such as the Estate—is the entity identified by statute to enforce the easement's pertinent terms. *See* 33 M.R.S. § 478(1)(B). If the Land Trust cannot, for identified reasons, fulfill its obligations in reviewing and enforcing the easement, the Attorney General—again, not a private landowner—has the authority to enforce the easement. *See id.* § 478(1)(D).

[¶30] The pleadings disclose no impediment to the Land Trust's exercise of its authority, and we are not persuaded that the Legislature intended to hinder a competent conservation easement holder's ability to carry out its responsibilities by authorizing expensive and complicated enforcement lawsuits to be prosecuted by any party who happens to own land that is also subject to the conservation easement. *See* Gerald Korngold, *Governmental Conservation Easements: A Means to Advance Efficiency, Freedom from Coercion, Flexibility, and Democracy*, 78 Brooklyn L. Rev. 467, 500-01 (2013) (observing, in a case where neighbors brought suit to enforce a conservation easement and sued the owner of the burdened land and the

holder of the easement, *Bjork v. Draper*, 936 N.E.2d 763 (Ill. App. Ct. 2010), that the "nonprofit organization was forced to spend [unknown sums of money] on legal fees in several trials and appeals in this matter, rather than on land conservation activities").

[¶31]  Although abutting or nearby landowners may have the capacity to seek enforcement of local zoning regulations, which the Estate has also done in a separate matter, *see Estate of Robbins v. Town of Cumberland*, 2017 ME 16, --- A.3d ---, the Legislature has specifically limited standing to enforce the terms of a conservation easement against a landowner.  There is no suggestion in section 478(1) or in extrinsic sources that the Legislature intended to expand litigation and increase costs to the holders of conservation easements, especially when such standing would allow suit even by an owner of land that, although subject to the easement, is distant from the property on which compliance has been questioned.  Rather, by enacting a statute that narrowly defined the entities that may bring legal action and the circumstances in which the Attorney General may step in for an easement holder to enforce an easement's terms, the Legislature acted to constrain individual challenges to a conservation easement holder's decision-making.

## III. CONCLUSION

[¶32]   Marion B. Payson granted to CMIT, which was replaced by the Land Trust, a conservation easement over a significant piece of coastal property.   Payson's family has since sold part of the burdened land for development.  The Town of Cumberland has purchased a portion of that land and intends to develop it so that the public may access a valued natural resource: namely, a beach on the Town's property.  The Town has received conditional approval from the Planning Board to undertake limited development, an action which is under review in a separate appeal, with the Land Trust's permission and continued supervision.

[¶33]  The Estate now seeks to litigate the details of enforcement of the conservation easement upon land that it has no legal right to control.   In essence, the Estate seeks to enforce the easement for its own benefit.[10]  The easement's benefit, however, runs to the Land Trust, *see* Morrisette at 381,

---

[10]  Notably, for a conservation easement to be a valid charitable contribution for federal tax purposes, thus permitting the owner to take a deduction for the contribution, the contribution must be made "exclusively for conservation purposes."  26 U.S.C.S. § 170(f)(3)(B)(iii), (h)(1)(C) (LEXIS through Pub. L. No. 114-262).  This is in response to Congress's concern about "the property owner who takes an income tax deduction, then sits on the back porch looking over the unspoiled acreage that was the subject of the deduction."  4 *Powell on Real Property* § 34A.04[4][b] (quotation marks omitted).  Thus, the tax laws are "'designed to ensure that the payor's primary purpose is to assist the charity and not to secure some benefit personal to the payor.'"  *Id.* § 34A.04[4][a] (quoting *Christiansen v. Comm'r*, 843 F.2d 418, 420 (10th Cir. 1988)).  The Maine Legislature could not have intended to permit a landowner to donate a conservation easement for the public's benefit with the expectation that the landowner may, after selling a portion of the property, enforce the easement against the new owner in order to advance the landowner's private interests.

and the purpose of the easement is to benefit the public, *see* 33 M.R.S. § 477-A(1).

[¶34]  The Superior Court correctly concluded that the Legislature did not intend to authorize a proliferation of suits among neighbors to compel the enforcement of conservation easements against each other.  Accordingly, the Estate lacks standing to bring an action to compel the Land Trust to bar the proposed public access.  We affirm the Superior Court's well-reasoned interpretation of the ambiguous statute and conclude that, applying that interpretation of the statute, the Estate lacks standing to sue the Land Trust and the Town of Cumberland in this matter to obstruct the planned use of the land to benefit the public.[11]

[¶35]   At this early point in the proceedings, however, we cannot conclude as a matter of law that the claim for breach of contract was an "action affecting a conservation easement."   33 M.R.S. § 478(1).   Thus, we vacate the judgment with respect to that count of the complaint but affirm the judgment dismissing all other claims for lack of statutory standing.

---

[11] Although the dissenting opinion suggests that the result is "absurd or illogical," Dissenting Opinion ¶ 52, we simply hold that an owner of similarly encumbered property does not have standing to assert the interests of the holder of the easement (here, the Land Trust) as to another owner's land.  *See* 33 M.R.S. § 478(1) (2016).

The entry is:

> Judgment vacated to the extent that it dismissed the breach of contract claim; in all other respects, judgment affirmed. Remanded for further proceedings on the breach of contract claim.

---

ALEXANDER, J. and JABAR, J., dissenting.

[¶36] We respectfully dissent from the Court's decision that the explicit language of 33 M.R.S. § 478(1)(A) (2016) giving standing in any action affecting the conservation easement to "[a]n owner of an interest in the real property burdened by the easement," is somehow ambiguous. After holding that section 478(1)(A) is ambiguous, the Court erroneously determines that the Estate of Merrill P. Robbins lacked standing to bring this action affecting its interest in its real property burdened by the easement and affirms the Superior Court's order dismissing the Estate's complaint seeking to enforce the conservation easement. The Court does remand for the trial court to explore whether or not there might be some contractual obligation that might give the Estate standing.

## I. EASEMENT HISTORY

[¶37] In 1997, Marion B. Payson executed a conservation easement by deed. The Chebeague & Cumberland Land Trust (the Land Trust) is the current grantee of the deed and "holder" of the easement. The easement covers a roughly 100-acre parcel of land on the coast in Cumberland, referred to as "the Property" throughout the deed. The conservation easement's stated purpose is to retain the Property "predominantly in its scenic, natural, and open space condition for conservation purposes and to prevent any use of the Property that will significantly impair or interfere with the conservation values of the Property and the Property's natural resources and associated ecosystems." This stated purpose generally follows the definition of "conservation easement" in 33 M.R.S. § 476(1) (2016). Neither the stated purpose of the conservation easement nor the statutory definition make any particular mention of public access, though many of the uses listed would involve use by some individuals, though not necessarily the public at large. *See id.*

[¶38] The Estate owns only a small portion of the 100-acre parcel subject to the conservation easement. Since the 1997 creation of the easement, (1) the Town of Cumberland has acquired another part of the 100

acres to develop a beach, a sixty-car parking lot, a bath house and related amenities, and (2) a real estate developer has acquired the remainder of the protected land that has been divided into ten house lots.[12] Although conservation easements are required by law to be "unlimited in duration" subject to certain exceptions, 33 M.R.S. § 477(3) (2016), limitations on uses consistent with the original stated purposes of the easement apparently are being abandoned, except on the Estate's property.[13]

[¶39]  The Land Trust, as holder of the conservation easement and grantee of the deed, is primarily responsible for enforcing the terms of the easement.  *See* 33 M.R.S. §§ 476(2), 478(1)(B).  The Land Trust supports the planned development of the land.

[¶40]  The Estate, after communicating its concerns to the Land Trust and the Town, brought this action naming the Land Trust and the Town as defendants.  Upon the Town's and the Land Trust's motions to dismiss pursuant to M.R. Civ. P. 12(b)(6), the trial court dismissed the Estate's complaint in its entirety, concluding that the Estate lacked standing to initiate

---

[12]  Three houses have already been built in this area, and seven lots remain available for development.

[13]  This easement was created in 1997.  Conservation easements created after 2007 may be terminated or amended only with court approval in an action in which the Attorney General is made a party.  *See* 33 M.R.S. §§ 477(3)(B), 477-A(2)(B), 478 (2016).

an action to enforce the conservation easement as it relates to the Town's property.

[¶41]  The trial court interpreted 33 M.R.S. § 478(1)(A) and concluded that the statutory language "[a]n owner of an interest in the real property burdened by the easement" is limited to an owner of an interest in the real property that may actually be subject to development or other use allegedly inconsistent with the limitations of the conservation easement—here, the Town property.  By that reasoning, accepted by the Court, only an owner of land being developed in violation of a conservation easement has standing, as an owner, to challenge its own violation of the easement.

## II.  LEGAL ANALYSIS

[¶42]  Every plaintiff who commences a lawsuit must demonstrate that it has standing to do so.  *Bank of Am., N.A. v. Greenleaf*, 2014 ME 89, ¶ 7, 96 A.3d 700.  "Standing" is a term that "refers to the minimum interest or injury suffered that is likely to be redressed by judicial relief," and what is required to demonstrate standing may be set out by the common law or by statute, depending upon the type of claim.  *Id.*

[¶43]  The conservation easement laws codified at 33 M.R.S. §§ 476 to 479-C (2016) apply to the conservation easement at issue in this matter,

because the easement was created after September 19, 1985.  *See* 33 M.R.S. § 479-A(1); P.L. 1985, ch. 395, § 3 (effective Sept. 19, 1985).  Section 478(1) specifies who may initiate or intervene in an action affecting a conservation easement.  It provides, in pertinent part:

> **1.  Action or intervention.**  An action affecting a conservation easement may be brought or intervened in by:
>
> **A.** An owner of an interest in the real property burdened by the easement;
>
> **B.** A holder of the easement;
>
> **C.** A person having a 3rd-party right of enforcement; or
>
> **D.** The Attorney General [provided certain conditions are met first].

[¶44]  The statute identifies four different entities that may enforce a conservation easement.  This case deals with only one of those alternatives, section 478(1)(A).  There is no reason to discuss the possible role of the Land Trust that is a holder of the easement, section 478(1)(B); the Attorney General pursuant to section 478(1)(D); or other parties, including abutting landowners, that may have third party rights of enforcement pursuant to section 478(1)(C).

[¶45]  The Estate's complaint is "[a]n action affecting a conservation easement."  33 M.R.S. § 478(1).  To establish standing, pursuant to section

478(1)(A), therefore, the Estate must demonstrate only that it is "[a]n owner of an interest in the real property burdened by the easement." 33 M.R.S. § 478(1)(A). There is no dispute that the Estate owns property that is "burdened by the easement."

[¶46] "In construing a statute our duty is to give effect to the intent of the Legislature as evidenced by the language of the statute." *Concord Gen. Mut. Ins. Co. v. Patrons-Oxford Mut. Ins. Co.*, 411 A.2d 1017, 1020 (Me. 1980). "We will construe a statute based on its plain meaning in the context of the statutory scheme, and only if the statute is ambiguous will we look to extrinsic indicia of legislative intent such as relevant legislative history." *Strout v. Cent. Me. Med. Ctr.*, 2014 ME 77, ¶ 10, 94 A.3d 786. "If the meaning of the language is plain, we must interpret the statute to mean exactly what it says." *Concord Gen. Mut. Ins. Co.*, 411 A.2d at 1020.

[¶47] As indicated in the quote from section 478(1)(A) above, "[a]n action affecting a conservation easement may be brought or intervened in by . . . [a]n owner of an interest in the real property burdened by the easement." The plain meaning of this language confers standing to bring an action affecting a conservation easement upon any person who owns an interest in the land burdened by the easement. Section 478's specific

reference to "the real property burdened by the easement" refers back to *all* of *the* real property so burdened, not just the property that may be used in violation of the easement.

[¶48] "The" is a definite article and it points to a definite object. "[T]he real property burdened by the easement" is a specific reference, and it is a reference to the property described in a conservation easement that is being burdened by that conservation easement. To conclude that "the real property burdened by the easement" refers only to the parcel being altered would require this Court to add to the language of 478(1)(A). Although the holder of the easement has certain duties that other property owners within the "real property burdened by the easement" may enforce, this does not limit the enforcement capacity given to any property owner who owns land within the overall conservation easement.

[¶49] Under basic property law, a landowner who owns property subject to an easement holds that property subject to all of the restrictions within the easement. A conservation easement is one form of easement and carries the same duties and burdens of any easement.

> A conservation easement is usually not an easement in the sense of an affirmative right to use or traverse the burdened property . . . . Since the landowner agrees to restrict activity on

> the land, a conservation easement may be more accurately viewed as a restrictive covenant or negative easement.

4-34A Richard R. Powell, *Powell on Real Property* § 34A.01 (Michael Allan Wolf ed., 2005).

[¶50]  The Land Trust and the Town argue that applying section 478's plain language would lead to illogical or absurd results contrary to public interest.  They speculate that landowners subject to conservation easements spanning thousands of acres may commence lawsuits to prevent other landowners living miles away from making small improvements to their property.  That hypothetical is not the situation before us.  Here the easement covers only 100 acres, and the use, quiet enjoyment, and value of the Estate's property may be directly affected by the development of the Town property as a public beach.

[¶51]  Even considering the Land Trust and the Town's hypothetical, though, such a result would not be absurd or illogical.  In an analogous case involving a 31,000-acre subdivision property, we concluded that owners of a leasehold interest in a developed lot in a subdivision had standing to challenge proposed changes in use of a few undeveloped lots not contiguous to the leaseholder's lot.  *Nelson v. Bayroot, LLC*, 2008 ME 91, ¶¶ 3-7, 9-14, 953 A.2d 378 (noting that courts in other states have held that "those with

interests in property contained in a subdivision have interests in other subdivision property"). Furthermore, courts and defendants have tools to dispatch litigation that is frivolous or otherwise fails to state a claim appropriate for judicial determination. *See, e.g.*, M.R. Civ. P. 11, 12(b)(6), 56.

[¶52] The truly absurd or illogical application of section 478(1) would be to hold that only the developer of land violating the easement, or the holder of the easement who supports the development, have standing to challenge the resulting violation of the easement. The plain meaning of section 478(1)(A) is that any owner of an interest in the real property burdened by a conservation easement has standing to commence an action affecting that easement.

[¶53] Because the Estate, as an owner of an interest in the land benefitted and burdened by the conservation easement, has standing to challenge an alleged violation of the conservation easement on another lot that may adversely affect the Estate's quiet enjoyment of its land, we would vacate and allow the action to proceed on the merits of the Estate's claim.

32

Scott D. Anderson, Esq. (orally) and Juliet T. Browne, Verrill Dana, LLP, Portland, for appellant Estate of Merrill P. Robbins

Natalie L. Burns, Esq. (orally) and Alyssa C. Tibbetts, Esq., Jensen Baird Gardner & Henry, Portland, for appellee Town of Cumberland

Paul F. Driscoll, Esq., and Russell B. Pierce, Jr., Esq. (orally), Norman, Hanson & DeTroy, LLC, Portland, for appellee Chebeague & Cumberland Land Trust

R. Reeve Wood III, Esq., Maine Farmland Trust, Inc., Belfast, for amicus curiae Maine Farmland Trust, Inc.

Lauren E. Parker, Asst. Atty Gen., Office of the Attorney General, Augusta, for amicus curiae Office of the Attorney General

Cumberland Superior Court docket number CV-2014-523
FOR CLERK REFERENCE ONLY