STATE OF MAINE
CUMBERLAND, ss.
BUSINESS AND CONSUMER COURT
CIVIL ACTION
DOCKET NO. BCD-CIV-2022-00031

CITY OF LEWISTON,     )
         )
     Plaintiff,    )
         )
v.        )    ORDER DENYING DEFENDANT'S
         )    MOTION TO DISMISS AND
         )    MOTION FOR JUDGMENT ON
         )    THE PLEADINGS
AUBURN WATER DISTRICT,    )
         )
     Defendant,    )
         )
    And     )
         )
INHABITANTS OF THE TOWN    )
OF TURNER, et al.,    )
         )
     Parties-in-Interest.    )

## INTRODUCTION

Before the court is the Defendant Auburn Water District's (the "AWD") Motion to Dismiss and Motion for Judgment on the Pleadings concerning Plaintiff the City of Lewiston's ("Lewiston") Complaint for Declaratory Judgment in the above-captioned matter. The court heard argument on AWD's motion on May 31, 2023. For the reasons discussed below, AWD's motion is denied.

## BACKGROUND

The court accepts the following facts, as pled by Lewiston in its Complaint, as true and construes them in the light most favorable to Lewiston for the limited purpose of deciding AWD's motion.

Lewiston supplies drinking water and water for other residential and commercial uses to its residents through its utility the Water & Sewer Division of the Lewiston Public Works

1

Department. (Pl.'s Compl. ¶¶ 3-4.) AWD is the water utility that provides drinking water and water for other uses from the local public water supply, Lake Auburn, to the City of Auburn and the Town of Poland. (Pl.'s Compl. ¶¶ 7-8, 18.) It was chartered by the State of Maine Legislature, and it operates according to its charter and bylaws. (Pl.'s Compl. ¶¶ 5-6.)

On June 29, 1989, the Environmental Protection Agency ("EPA") published the Surface Water Treatment Rule pursuant to the Safe Drinking Water Act, which rule requires disinfection and filtration for all public water systems that draw from waters that are under the direct influence of surface water (the "Filtration Requirements"). (Pl.'s Compl. ¶ 25.) Systems with demonstrable compliance with the rule's most stringent water quality criteria could qualify for avoidance of its Filtration Requirements and obtain a waiver. (Pl.'s Compl. ¶ 26.)

The Maine Drinking Water Program notified Lewiston that the surface water of Lake Auburn required filtration before June 19, 1992. (Pl.'s Compl. ¶ 27.) Lewiston believes that AWD received the same notification. (Pl.'s Compl. ¶ 28.) Compliance with the Filtration Requirements would cost the parties' ratepayers tens of millions of dollars in addition to annual operating costs.[1] (Pl.'s Compl. ¶ 29.) On August 14, 1989, Lewiston, through its water utility, and AWD agreed to share the costs of a water quality study to determine the need for, cost and benefit of improved water treatment, as well as the availability of a waiver-exemption from the Filtration Requirements. (Pl.'s Compl. ¶ 30.)

The engineering firm retained to lead the study recommended that the parties enter into an interlocal agreement regarding oversight and control of the watershed, that AWD adopt new bylaws, and that Lewiston and AWD make capital improvements to improve water quality and reliability. (Pl.'s Compl. ¶ 31.) On March 21, 1991, the Maine Drinking Water Program wrote to

---

[1] During 1991, it was estimated that compliance would cost up to approximately $24,000,000, with projected additional annual operating costs between $1,500,000 and $2,000,000. (Pl.'s Compl. ¶¶ 29, 44f.)

Lewiston, copying AWD, and stated that "for a filtration waiver to be granted, it will take the commitment of both communities to assure the continuing success of watershed protection." (Pl.'s Compl. ¶ 32.)

On August 27, 1991, AWD adopted the Bylaws for Protection of Lake Auburn. (Pl.'s Compl. ¶ 34.) Shortly thereafter AWD submitted an application to the Maine Drinking Water Program for an exemption to the Filtration Requirements. (Pl.'s Compl. ¶ 35.) The bylaws and application each, in part, described the subject watershed and its boundaries. (Pl.'s Compl. ¶¶ 35d-e, 36a-b.) They also described AWD's powers and responsibilities flowing from its original charter. (Pl.'s Compl. ¶¶ 35a-c, 36c-e.) Around this same time, Lewiston submitted a separate but identical application for the waiver. (Pl.'s Compl. ¶ 37.) Each party's application was approved on December 30, 1991, on the condition, among others, that each conduct watershed control activities consistent with the EPA's avoidance requirements outlined in the application. (Pl.'s Compl. ¶ 38.)

On May 19, 1993, Lewiston, through its water utility, and AWD entered into a purchase and sale agreement (the "P&S Agreement"). (Pl.'s Compl. ¶ 40.) The P&S Agreement quantified the area of the watershed, and it acknowledged that land use activities within the watershed could compromise Lake Auburn's water quality and the necessity of control measures to abate such impacts. (Pl.'s Compl. ¶¶ 40a-b.) The P&S Agreement also memorialized (1) Lewiston's purchase, for $750,000, of a one-half interest in AWD's land within the watershed, (2) that said interest was to be conveyed to the Lake Auburn Watershed Protection Commission, (3) that Lewiston otherwise conveyed to said commission the entirety of its interest in lands within the watershed, (4) that an additional $31,800 was paid by AWD to the commission, and (5) that Lewiston granted a ten-year lease for a water main at a below-market rate. (Pl.'s Compl. ¶ 40c.)

3

Apart from the transactional content, the P&S Agreement also delineated commitments undertaken by the parties. Foremost and consistent with the Maine Drinking Water Program's guidance, the P&S Agreement contemplated the parties' execution of an interlocal agreement. (Pl.'s Compl. ¶ 40d.) The interlocal agreement would establish the Lake Auburn Watershed Protection Commission. (Pl.'s Compl. ¶ 40d.) Moreover, the interlocal agreement would oblige AWD to use its charter authority to protect the Lake Auburn watershed and to ensure that the parties maintain their exemptions from the Filtration Requirements. (Pl.'s Compl. ¶ 40e.)

On June 29, 1993, Lewiston, AWD, and Party-in-Interest the Town of Turner entered into the Interlocal Agreement for Lake Auburn Watershed Protection (the "Basic Agreement"), pursuant to the P&S Agreement and in accordance with 30-A M.R.S. §§ 2201-2208 (1989). (Pl.'s Compl. ¶¶ 10, 42.) The Basic Agreement created the Lake Auburn Watershed Protection Commission, which owns approximately 1,600 acres of the local Lake Auburn watershed that comprises much of the public water supply for Lewiston, Auburn, and Poland. (Pl.'s Compl. ¶¶ 11, 13, 40c-d, 41, 44g-h.) It also formally established the total area of the watershed and the parties' rights to use it to supply drinking water. (Pl.'s Compl. ¶ 44b-c.)

Regarding the Filtration Requirements, the Basic Agreement acknowledged: that land use and activities within the watershed could impact water purity; that land use controls within the watershed are therefore essential to securing and maintaining the exemption to the Filtration Requirements; and that the parties' consumers will bear the cost of compliance with the Filtration Requirements if an exemption therefrom is not obtained or maintained. (Pl.'s Compl. ¶ 44d-f.) It also delegated the Lake Auburn Watershed Protection Commission a concurrent authority to enforce applicable laws and ordinances for the purpose of preserving water purity throughout the watershed. (Pl.'s Compl. ¶ 44i.) In delineating AWD's powers thereunder, the Basic Agreement

4

provides, in relevant part:

> "The [AWD] pledges, covenants, and agrees, ... to consider recommendations from the [Lake Auburn Watershed Protection Commission] and also to exercise its regulatory authority over the Lake and watershed pursuant to its Charter and law and to enact, amend, or repeal those lawful by-laws, regulations, orders, or ordinances in such manner and to such extent as is required or advisable to control and protect the watershed or waters of Lake Auburn in order for both parties to maintain their exemptions from filtration requirements under the surface water treatment rules adopted under the Safe Drinking Water Act."

(Pl.'s Compl. ¶ 45; Ex. L § 7.)

Nearly thirty years after execution of the Basic Agreement and various related agreements, on November 13, 2020, Auburn published a request for proposals for an Evaluation of Ordinances Applicable to the Protection of the Lake Auburn Watershed. (Pl.'s Compl. ¶ 50.) That request made no mention of the Basic Agreement. (Pl.'s Compl. ¶ 52.) One initiative proposed in response to the request, and that was subsequently adopted during March of 2022 by Auburn's City Council, modified the watershed's boundaries and reduced its area. (Pl.'s Compl. ¶¶ 58-63.) That modification to the watershed was approved by AWD. (Pl.'s Compl. ¶¶ 64-67.)

A second proposed initiative involved revisions to Auburn's septic design standard and adoption of portions of the Maine Subsurface Wastewater Disposal Rules. (Pl.'s Compl. ¶ 69.) In 2022, the Auburn Planning Board approved the proposed septic ordinance, which permitted construction on new sites within the watershed where construction was not permissible prior to the approval of the new septic ordinance. (Pl.'s Compl. ¶¶ 69-70.)

On April 15, 2022, the State of Maine Department of Environmental Protection notified Lewiston by letter that, concerning the septic ordinance, "additional land use controls and off-site mitigation ... would be needed to mitigate" new pollutants loading

5

into Lake Auburn. (Pl.'s Compl. ¶ 71.) The Director of the Maine Drinking Water Program sent a similar letter to Auburn. (Pl.'s Compl. ¶ 72.) Each of Lewiston and AWD were copied to each communication. (Pl.'s Compl. ¶¶ 71-72.)

On March 31, 2022, a Lewiston City Administrator requested that AWD honor its commitments to Lewiston under the Basic Agreement to enact or amend governance and regulatory measures to control and protect the watershed or waters of Lake Auburn in order for Lewiston and AWD both to maintain and benefit from their exemptions to the Filtration Requirements imposed by the Safe Drinking Water Act. (Pl.'s Compl. ¶ 74.).

The Plaintiff here only seeks the parties' rights and obligations under the Basic Agreement. It does not seek damages or injunctive relief. (Pl.'s Compl. ¶ 81; Pl.'s Resp. to Def.'s Mot. to Dismiss and for Mot. J. Pleadings, 6). The Prayer for Relief, in paragraphs A, B, D, E, essentially requests that the court declare the parties' rights. (Pl.'s Compl. ¶¶ A-B, D-E.) Only paragraph C appears to ask the court to find that AWD has breached the Basic Agreement.[2]

## LEGAL STANDARD

A motion for judgment on the pleadings under Maine Rule of Civil Procedure 12(c) tests the legal sufficiency of the complaint.[3] *Cunningham v. Haza*, 538 A.2d 265, 267 (Me. 1988). When, as here, the defendant is the moving party the motion is treated as "nothing more than a motion under M.R. Civ. P. 12(b)(6) to dismiss the complaint for failure to state a claim upon which

---

[2] The court was not clear after oral argument whether the Plaintiff continues to seek that relief and does not address it here. Plaintiff should inform the court and opposing counsel whether that is the case as it would impact the course of any remaining discovery or trial.

[3] Generally, a court may consider only the pleadings on a motion to dismiss. *Est. of Robbins v. Chebeague & Cumberland Land Tr.*, 2017 ME 17, ¶ 2 n.2, 154 A.3d 1185 (citing *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶¶ 8-9, 843 A.2d 43). However, official public documents, documents central to the plaintiff's complaint, and documents referred to therein may also be considered in a ruling on a motion to dismiss "without converting [the] motion ... into a motion for summary judgment when the authenticity of such documents is not challenged." *Id.* (citing *Moody*, 2004 ME 20, ¶ 10, 843 A.2d 43).

. 6

relief can be granted." *Wawenock, LLC v. Dep't of Transp.*, 2018 ME 83, ¶ 4, 187 A.3d 609 (citation omitted). Hence, when reviewing the complaint, the court assumes the factual allegations are true, examines the complaint in the light most favorable to the plaintiff, and ascertains whether the complaint alleges the elements of a cause of action or facts entitling the plaintiff to relief on some legal theory. *Id.* (citation omitted).

## DISCUSSION

Lewiston's Complaint is limited to a single count and requests primarily declaratory relief. (Pls.' Compl. ¶¶ 76-81.) Generally, it seeks declarations regarding the parties' respective rights under the Basic Agreement and AWD's duties flowing from its charter and bylaws. Notwithstanding the absence of any specific breach or other injury pled by Lewiston, the court is authorized to grant declaratory relief before the occurrence of a breach of the parties' contract. *See* 14 M.R.S. 5955 (2022).

Here, there is a justiciable dispute. The parties disagree whether the Basic Agreement contains provisions that would impact AWD's ability to change the boundary of the watershed serving Lake Auburn or allow changes to septic regulations. The court finds that the Basic Agreement is ambiguous with respect to the existence and scope of any contractual obligation it places upon AWD. The parties identified a lot of facts that may impact whether these events implicate any obligation, if any, on AWD. Hence, it will be necessary to adduce facts to interpret the Basic Agreement and establish the parties' relative rights and obligations with respect to oversight of the Lake Auburn watershed and preservation of the waiver-exemption from the Filtration Requirements.[4]   Given the existence of a dispute and Lewiston's statutory right to ask the court to determine the right and obligations of the parties to a contract prior to a breach,

---

[4] The court may also decline to decide the request for declaratory relief if any court order would not "terminate the uncertainty or controversy giving rise to the proceeding" after it hears the case. 14 M.R.S. § 5958 (2022).

7

however, the court concludes that Lewiston's Complaint pleads a cause of action for declaratory relief sufficient to survive AWD's Motion to Dismiss and for Judgment on the Pleadings.

The parties should confer and submit a proposed scheduling order or request a conference with the court if necessary to inform the future course of these proceedings.

## CONCLUSION

Based on the foregoing, the entry will be: Defendant Auburn Water District's Motion to Dismiss and Motion for Judgment on the Pleadings is DENIED.

So ordered.

The Clerk is requested to enter this Order on the Docket, incorporating it by reference pursuant to Maine Rule of Civil Procedure 79(a).

Date: 6/9/23

Thomas R. McKeon
Justice, Business & Consumer Court

Entered on the docket: 06/09/2023

8