STATE OF MAINE
CUMBERLAND, ss.

STATE OF MAINE
Cumberland ss. Clerk's Office

APR 01 2022

RECEIVED

SUPERIOR COURT
CIVIL ACTION
DOCKET NO.   CV-21-0327

SPECTRUM HEALTHCARE PARTNERS, P.A.   )
                                      )
           Plaintiff                     )
                                     )
    v.                              )
JEFFREY BEAN                     )
                                   )
       Defendant                 )
                                   )
                                   )
                                   )

ORDER ON DEFENDANT'S MOTION
TO DISMISS COUNTERCLAIM

Before the Court is Plaintiff Spectrum Healthcare Partners, P.A.'s ("Spectrum") Motion to Dismiss Defendant Jeffrey Bean's ("Bean") nine count counterclaim. For the reasons set forth herein, Spectrum's Motion is GRANTED IN PART AND DENIED IN PART.

## FACTUAL BACKGROUND

When reviewing a Defendant's Motion to Dismiss a Plaintiff's counterclaim, the Court views the factual allegations contained in the counterclaim in a light most favorable to the non-moving party. Accordingly, the Court finds the following facts for the purposes of deciding the instant Motion.

Dr. Jeffrey Bean, D.O. is a former employee and shareholder of Spectrum Healthcare Partners, P.A. He began his employment at Spectrum after a number of years as an employee turned shareholder of Orthopedic Associates ("OA"). OA was an Orthopedic specialty practice that, on January 1st, 2015, merged with Spectrum. After the effective date of the merger, Bean

1

became a shareholder and practicing physician at Spectrum in their Southern Maine Orthopedic Division ("Ortho South").

During Bean's tenure with Ortho South, two series of events occurred which led to Spectrum's complaint and Bean's counterclaim: (1) Bean's purported agreement with Spectrum to execute a promissory note providing a security interest for a lease of the 33 Sewall Street property in exchange for shares of Class B stock held in OA's various capital assets; and (2) Bean's purported non-compliance with the goodwill buyout and non competition provisions of his employment agreement with Spectrum. Because these two separate and distinct events serve as the bases for Bean's counterclaim, a summary of each is provided below:

## I. Security for Shares Arrangement

In 2015, when OA merged with Spectrum, many OA shareholders were issued both Class A and Class B stock, while others were issued only Class A stock.[1] Bean received Class A stock only and alleges that, after the merger, he was promised Class B stock by Spectrum leadership. In October of 2019, Spectrum began to consider proposals for issuance of Class B shares to those shareholders who had not yet received them — including Bean.

On November 12th, 2019, Spectrum's Board of Directors authorized the distribution of 951 shares to those shareholders working in the Ortho South division who had yet to receive Class B stock. In return for the issuance and distribution of these shares, shareholders would be required to execute a promissory note securing Spectrum's obligations on a five-year lease for Ortho South's primary location at 33 Sewall Street in Portland, Maine. On June 29th, 2020, Bean

---

[1] Class A stock consisted of shares in Spectrum's organization itself, while Class B stock consisted of shares in OA's existing capital assets at the time of merger, including the facility's ambulatory surgery center, its Magnetic Resonance Imaging ("MRI") machine and its physical therapy practice.

signed a Letter of Interest ("LOI") evidencing his intent to follow through with this agreement. Spectrum, nor any of its representatives, signed the LOI.

Prior to the execution of the security agreement and the distribution of Class B stock, On September 5th, 2020, Bean gave notice of his intention to leave Spectrum in March of 2021.[2] Soon after, in late fall of 2020, Spectrum entered negotiations for the sale of OA's Magnetic Resonance Imaging ("MRI") service line, which promised a financial benefit to those Ortho South shareholders who held Class B shares. Bean never took part in these discussions nor did he execute a promissory note granting security for the lease of the 33 Sewall Street premises. The sale of the MRI service line occurred in early 2021, and Bean received no benefit.

## II. Breach of Employment Agreement and Deferred Compensation Plan

Bean's employment with Spectrum was governed by an employment agreement ("Agreement") which contained two contractual provisions central to Spectrum's complaint and Bean's Counterclaim: (i) a goodwill buyout provision; and (ii) a non-interference provision. Bean's relationship with Spectrum was also governed by the provisions of a deferred compensation plan ("Plan").

The Agreement's goodwill buyout provision prevented Bean from practicing the same clinical specialty within thirty miles of Spectrum for two years following his departure from the company. In the event of a breach, the provision required Bean to pay Spectrum the lesser of (a) an amount equal to 50% of the average annual cash compensation paid by Spectrum to Bean during the twenty four month period of employment ending on his last day of employment; or (b) $250,000. On December 19th, 2019, Spectrum's Board of Directors voted to lower this buyout

---

[2] Pursuant to section 11(a) of Bean's employment agreement, Bean could not give "less than 180 days" notice of his intention to leave. Because he gave his notice on September 5th, 2020, his date of departure would have been March 4th, 2021.

amount from $250,000 to $100,000 for the 2020 calendar year, returning the amount to $250,000 on January 1st, 2021. Minutes of that December 19th meeting obtained soon after it occurred suggest that this reduced buyout amount was applicable to Bean. Later representations by Spectrum and its leadership, however, suggest it was not.

The non-interference provision of the Agreement prohibited Bean from soliciting or hiring persons employed or otherwise engaged with Spectrum, assisting in the hiring of persons employed by or otherwise engaged with Spectrum, encouraging any person employed or otherwise engaged by Spectrum to terminate their employment or engagement with the Spectrum, and soliciting, encouraging or inducing any person to refrain from entering into an employment or other engagement or relationship with Spectrum.

The deferred compensation plan ("Plan") entitled Bean to receive compensation he had accumulated prior to his departure that had not been paid out to him. The Plan provided that any employee who violates the noncompetition or goodwill buyout provisions of their Employment Agreement is not entitled to receipt of deferred compensation.

## III. Bean's Departure and Spectrum's Lawsuit

In March of 2021, Bean left Spectrum and joined another Maine based healthcare provider at one of its offices in Windham. There, Bean practices a similar clinical specialty to that which he practiced at Spectrum. Bean's new office is located within the thirty mile restrictive zone contemplated by the goodwill buyout provision.

After multiple failed attempts to obtain payment of the requisite goodwill buyout amount, on September 1st, 2021, Spectrum filed a one count complaint in the Cumberland County Superior Court against Bean, alleging breach of contract. On September 20th, 2021, Bean timely answered the complaint and brought a nine count counterclaim. On October 25th, 2021,

4

Spectrum filed a Motion to Dismiss Bean's counterclaim. Bean then filed his opposition on January 25th, 2022, and Spectrum filed their reply on February 8th. Spectrum's Motion to Dismiss, now fully briefed, awaits this Court's decision.

## STANDARD OF REVIEW

"A motion to dismiss pursuant to M.R. Civ. P. 12(b)(6) tests the legal sufficiency of the [counterclaim]." *Seacoast Hangar Condo. II Ass'n v. Martel*, 2001 ME 112, ¶ 16, 775 A.2d 1166 (quoting *New Orleans Tanker Corp, v. Dep't of Transp.*, 1999 ME 67, ¶ 3, 728 A.2d 673). When the court reviews a motion to dismiss, "the [counterclaim] is examined 'in the light most favorable to the [counterclaim] plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the [counterclaim] plaintiff to relief pursuant to some legal theory.'" *Lalonde v. Cent. Me. Med. Ctr.*, 2017 ME 22, ¶ 11, 155 A.3d 426. In reviewing a Motion to Dismiss, a Court may consider: the factual allegations made in the complaining document, official public documents, documents central to the plaintiff's claim, and documents referred to in the complaint. *Moody v. State Liquor & Lottery Comm'n.*, 2004 ME 20, ¶ 11, 843 A.2d 43. Allegations in the counterclaim are deemed true for the purposes of deciding a motion to dismiss. *Id.* "A dismissal should only occur when it appears beyond doubt that a [counterclaim] plaintiff is entitled to no relief under any set of facts that he might prove in support of his claim." *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 7, 843 A.2d 43 (quoting *McAfee v. Cole*, 637 A.2d 463, 465 (Me. 1994)) (internal quotations omitted).

## Discussion

In his counterclaim, Bean raises nine counts, eight of which are addressed in this order.[3] Each Count is addressed in turn:

---

[3] Count IX of Bean's Counterclaim is identified by Bean as a request for "alternative and additional equitable relief." However, "alternative and equitable relief' is not a recognized cause of action and thus is not appropriately

## I.  Breach of Contract

Count I of Bean's counterclaim alleges a breach of three specific contracts related to his employment with Spectrum: his employment agreement ("Agreement"), the deferred compensation plan ("Plan") and the letter of intent ("LOI") which outlined an agreement exchanging a security interest for Class B shares. Each of these breach theories constitute separate and distinct allegations which serve as a basis for Bean's first count. As such, the Court analyzes Bean's Breach of Contract claim as it pertains to each contractual document.

To survive a motion to dismiss a breach of contract claim, a "plaintiff must demonstrate that the defendant breached a material term of the contract, and that the breach caused the plaintiff to suffer damages." *Tobin v. Barter*, 2014 ME 51, ¶ 10, 89 A.3d 1088.

### A.  Employment Agreement

Bean maintains that Spectrum breached the terms of the Agreement by failing to honor the amended terms of the goodwill buyout provision, as ratified by Spectrum's Board of Directors. As set forth *supra* at 3, Spectrum's Board of Directors lowered the alternative buyout amount from $250,000 to $100,000 for the 2020 calendar year with the intention that the amount rise again to $250,000 in 2021. Bean believes that, since he gave notice of his intention to leave his employment with Spectrum in September of 2020, he is entitled to take advantage of the 2020 buyout amount set at $100,000. Spectrum counters that, since Bean did not actually leave the company until 2021, the buyout amount applicable to him is $250,000.

Nothing provided within the pleadings indicates any intent by Spectrum for this lower buyout amount to apply only to physicians who officially depart the practice in the 2020 calendar

---

addressed at the Motion to Dismiss stage of this proceeding. Any particular remedy Bean seeks for the remaining, undismissed counts, may be addressed later. To the extent that Bean attempts to plead a claim for quantum meruit in his ninth count, it is dismissed because such a pleading is duplicitous of his claims arising out of Spectrum's failure to pay him deferred compensation.

year. While it is clear that Spectrum intended the buyout amount to rise back to its contractually set amount in 2021, it is unclear whether the temporarily lowered buyout amount was applicable to physicians like Bean, who gave notice of their intent to leave the practice in 2020.

Viewing these facts in a light most favorable to Bean, he has alleged a set of facts which entitle him to relief for Spectrum's alleged breach of the amended terms of the Agreement's goodwill buyout provision. If physicians in a similar situation to Bean were encompassed by the amended buyout terms, then Spectrum's refusal to accept a $100,000 payment from Bean as satisfaction of the goodwill buyout provision would constitute a breach. Accordingly, Bean's Count for breach of contract, premised on Spectrum's breach of the amended terms of the Agreement's goodwill buyout provision, survives Spectrum's Motion.

### B. Deferred Compensation Plan

Bean's next alleged breach theory, is premised on Spectrum's failure to pay him deferred compensation, as provided by the Plan. Spectrum maintains that they do not owe Bean any deferred compensation because Bean began work of a competitive nature after his employment with Spectrum ended and because he has failed to comply with the Agreement's goodwill buyout provision. The parties do not dispute that the Plan constitutes a contract. The essential question is whether Spectrum breached the Plan in a way that caused Bean to suffer damages.

The terms of the deferred compensation plan are laid out in Bean's counterclaim. Paragraph 2(b) of the Plan states, in relevant part:

> **2(b).** If an Employee breaches any obligation not to engage in the practice of medicine or any specialty within the practice of medicine or engage in any activity competitive with or adverse to the best interests of the Corporation, or fails to comply with the "goodwill buyout" requirements of his or her employment agreement, in violation of the terms of any employment agreement, or other arrangement with the Corporation, the Employee shall not be entitled to receive any deferred compensation notwithstanding any provision of this plan to the contrary.

7

(Countercl. ¶ 46.)

Bean's failure to comply with the original terms of the goodwill buyout provision does not necessarily doom his claim for breach of the Plan. As discussed previously, there is a set of facts which Bean may prove that make the amended terms of the goodwill buyout provision applicable to him. Thus, Spectrum cannot dismiss his claim for breach of the Plan on this basis.

Spectrum's argument for dismissal, therefore, is relegated to Bean's potential breach of "any obligation not to engage in the practice of medicine or any specialty within the practice of medicine or engage in any activity competitive with or adverse to the best interests of the Corporation."

While Spectrum's Motion correctly points out — and Bean's counterclaim affirms — that he is currently engaged in the competitive practice of medicine, Spectrum does not point to any particular provision of the Agreement, the Plan, or any other document which imposes an obligation on Bean not to engage in the practice of medicine, any specialty within the practice of medicine, or any activity competitive with or adverse to the best interests of Spectrum. The noncompetitive provision of the Agreement obligates Bean not to poach any of Spectrum's employees, future employees, patients, or otherwise engaged parties, but does not obligate him not to practice medicine. And, although the goodwill buyout provision does obligate Bean not to engage in the practice of medicine within a thirty mile radius, for two years. A breach of such obligation, can be cured by Bean's compliance with the terms of the goodwill buyout provision of the Agreement. In effect, if Bean complies with the terms of the goodwill buyout provision, he is still entitled to deferred compensation under the Plan.

Viewed in a light most favorable to Bean and his counterclaim, there is a set of facts which he may prove in order to prevail on his breach of contract claim centered on the Plan. If,

8

as alleged, the amended terms of the goodwill buyout provision applied to Bean, he would have complied with its terms by offering $100,000 to Spectrum to satisfy the provision. And, Spectrum's subsequent failure to provide him with such compensation would then constitute a breach. As such, Bean's claim for breach of the Plan also survives Spectrum's Motion.

## C. Letter of Intent

The next breach Bean alleges is Spectrum's breach of the LOI which outlined the terms of Bean's agreement with Spectrum, to execute a promissory note securing a lease on the 33 Sewall Street property in exchange for Class B stock. The LOI outlining these terms was issued to Bean, who signed it on June 29th, 2020. Spectrum, nor any of its representatives ever signed it. Bean claims this letter is a contract which binds both parties and that Spectrum materially breached it by failing to issue him class B shares in exchange for a promissory note. In its Motion for Dismissal, Spectrum counters that Bean was never entitled to Class B shares because the Letter of Intent was never signed by Spectrum, and that regardless, Bean never executed the promissory note which constituted his portion of the agreement.

Here, viewing the allegations in a light most favorable to Bean, the LOI may constitute a contract. *See Forrest Assocs. v. Passamaquoddy Tribe*, 2000 ME 195, P9, 760 A.2d 1041 ("A contract exists if the parties mutually assent to be bound by all its material terms, the assent is either expressly or impliedly manifested in the contract, and the contract is sufficiently definite to enable the court to ascertain its exact meaning and fix exactly the legal liabilities of each party.") The issuance of the LOI to Bean constitutes implied assent to the LOI's terms and the LOI itself seems sufficiently definite to enable this Court to fix the legal liabilities of each party.

However, under no set of facts alleged, can Bean prove that Spectrum breached the terms of this contract. Because Bean never executed a promissory note securing Spectrum's lease of

9

the 33 Sewall Street premises, Spectrum's failure to deliver their end of the bargain, Bean's allotment of Class B shares, cannot be considered a breach. This is true, even if Bean proves all facts alleged in support of this theory of breach. Accordingly, Bean's claim of breach premised on the LOI detailing their share for security arrangement is dismissed.

## II. Breach of Fiduciary Duty

Count II of Bean's counterclaim alleges that Spectrum breached their fiduciary duty to him by failing and refusing to provide accurate information regarding the amount owed by Dr. Bean for the Goodwill Buyout, failing to provide accurate minutes from the December 19th, 2019 meeting in which the goodwill buyout amount was lowered via Motion, refusing to issue Class B stock to him, and failing to distribute proceeds to him from OA's MRI service line. Spectrum counters that, although a fiduciary duty is owed by a corporation to a shareholder, none is imposed on Spectrum or its Board of Directors in this circumstance. Even if a duty is owed, Spectrum maintains that no breach occurred.

Under Maine common law, the elements of a breach of fiduciary duty claim are (1) a fiduciary relationship between the plaintiff and another person, (2) a breach of the other person's fiduciary duty toward the plaintiff, and (3) damages incurred by the plaintiff proximately caused by the breach. See *Steeves v. Bernstein, Shur, Sawyer & Nelson, P.C.*, 1998 ME 210, ¶ 10 n.8, 718 A.2d 186.

It is an elementary principle inherent in the nature of corporations, the conduct of their business and the protection of their properties, that the directors sustain a fiduciary relation to the stockholders. *Livermore Falls Trust and Banking Co. v. Riley*, 108 Me. 17, 21, 78 A. 980, 981 (1911). This is a broad principle that takes on meaning and significance only in a particularized factual context. *Atlantic Acoustical & Insulation Co. v. Moreira*, 348 A.2d 263, 267 (Me. 1978).

10

"Whether officers have been guilty of mismanagement in a particular case is largely a matter of fact dependent upon the circumstances of each case." *Id.*

One of the duties of a fiduciary is that of good faith. *See America v. Sunspray Condo Ass'n*, 2013 ME 19, ¶¶ 14-16, 61 A.3d 149. "Bad faith imports a dishonest purpose and implies wrongdoing or some motive of self interest." *Seacoast Hangar Condo. II Ass'n v. Martel*, 2001 ME 112, ¶ 21, 775 A.2d 1166.

Here, there is little doubt that both Spectrum and its CEO David Landry owed a fiduciary duty to Bean as a shareholder. Spectrum's attempt to limit the scope of its duty to Bean by characterizing his claims as arising out of his status as an employee rather than as a shareholder are unavailing. Spectrum and its leadership owed Bean a fiduciary duty of good faith.

Viewing Bean's counterclaim in a light most favorable to him, he pleads a set of facts which establishes a potential breach of this duty. According to Bean's counterclaim, he obtained minutes in December of 2020, noting that the buyout had been reduced to $100,000 in a meeting held on December 19th, 2020. According to this version of the minutes, such a reduction was applicable to "all orthopedic division shareholders," a group which encompassed Bean. In an August 2020 email from Landry, Landry represented to Bean that the reduced buyout only applied to shareholders in the "Ortho Southwest" division, a group which Bean was not a part of. Spectrum then again made this representation when it fulfilled Bean's request for a copy of the minutes from that 2019 meeting. In that copy, the reduced buyout was listed as being applicable only to "Ortho West" shareholders.[4]

---

[4] Although Landry's email and the copy of the minutes provided to Bean by Spectrum contain technically different terminology, this Court's understanding is that the terms "Ortho Southwest" and Ortho West" refer to the same division of Spectrum — neither of which Bean was considered a part.

11

In substance, the minutes of the December 19th, 2019 meeting obtained by Bean and the email sent and minutes provided by Landry and Spectrum are different. The language of Bean's version makes the reduced buyout applicable to him. The representations by Landry and Spectrum gerrymander him out of its applicability. Viewed in a light most favorable to Bean, these facts allege a dishonest purpose and imply wrongdoing. Accordingly, Bean's claim that Spectrum and its leadership breached its fiduciary duty owed to Bean, a shareholder, is not dismissed.

**III. Conversion**

In Count III of his counterclaim, Bean alleges that Spectrum improperly gained possession of property interests of his, converting them. Spectrum asserts that Bean cannot maintain an action for conversion because he was not legally entitled to any property he claims Spectrum converted.

The necessary elements for maintaining a claim of Conversion are a showing: (1) that the plaintiff had a property interest in the property converted; (2) that he had the right to possession of the property at the time of the alleged conversion; and (3) that he made a demand for its return which was denied by the holder. *Withers v. Hackett*, 714 A.2d 798, 800 (Me. 1998).

Here, even though Bean sets forth facts evidencing the necessary elements, his claim fails even if he proves all the facts alleged. Under no set of facts was Bean entitled to proceeds from the sale of OA's MRI service line, or to issuance of Class B shares. Accordingly, Count III of Bean's counterclaim is dismissed.

**IV. Tortious Interference with Advantageous Economic Relations**

In Count IV, Bean asserts that Spectrum tortiously interfered with his prospective economic advantage under his employment agreement and the LOI outlining the shares for

12

security arrangement. He asserts they did this "through fraud" which resulted in damages. (Countercl. ¶¶ 72-73.) In their Motion to Dismiss, Spectrum asserts that even if he is able to prove all the facts alleged, they do not meet the elements of fraud — the Tort alleged here.

In Maine, "'[i]nterference with an advantageous relationship requires the existence of a valid contract or prospective economic advantage, interference with that contract or advantage through fraud or intimidation, and damages proximately caused by the interference." *Petit v. Key Bank of Me.*, 688 A.2d 427, 430 (Me. 1996). When tortious interference is committed through fraud, the plaintiff must establish the elements of fraud in the following manner: A person is liable for fraud if the person (1) makes a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance on it, and (5) the other person justifiably relies on the representation as true and acts upon it to the damage of the plaintiff. *Grover v. Minette-Mills, Inc.*, 638 A.2d 712, 716 (Me. 1994).

Under Bean's facts, as plead, he has established a prima facie case of tortious interference through fraud. First, he has successfully set forth facts meeting all five elements of a claim asserting fraudulent conduct on the part of Spectrum and its leadership. Viewed in a light most favorable to Bean, he alleges that Spectrum leadership knowingly, or with reckless disregard as its truth, made a false representation as to the applicability of the amended goodwill buyout provision to Bean. It also establishes that this representation was made for the purpose of inducing Bean to either pay the $250,000 buy-out amount or some other amount greater than the $100,000 the buyout was reduced to. Additionally, the counterclaim establishes that Bean relied, at least in part, on this representation in formulating his exit from Spectrum — a decision which resulted in economic damage to him.

13

Second, the counterclaim further sets forth that Spectrum's false representation did interfere with a prospective economic advantage. Namely, that if Bean were to leave Spectrum prior to the end of the 2020 calendar year, he would only need to pay Spectrum $100,000 dollars in order to fulfill his buyout obligations.

## V. Declaratory Judgment[5]

Count V of Bean's counterclaim asks this Court for declaratory relief. Specifically, Bean requests judgments that the goodwill buyout provision is void, unenforceable, and contrary to public policy; that the goodwill buyout provision requires Bean to pay $100,000 instead of $250,000; that Spectrum is obligated to pay Bean legal fees; that the deferred compensation plan is void in all respects and fails to adequately comply with internal revenue code provisions and federal law; that in the event the deferred compensation plan is enforceable, Bean is entitled to twenty-four months of deferred compensation, and that failure of spectrum to timely and properly disclose the goodwill buyout amount to Bean prevents application of any exception to entitlement of deferred compensation. Spectrum seeks to dismiss Bean's fifth count by conclusorily alleging that none of his requests for relief have any legitimate bases.

First, the Court notes that a request for declaratory relief cannot serve as an independent cause of action. *See Colquhoun v. Webber*, 684 A.2d 405, 411 (Me. 1996) (holding that a declaratory judgment action cannot be used to create a cause of action that does not otherwise exist.) Thus, in order to survive Spectrum's Motion for Dismissal, Bean must complain of some recognized cause of action that his request for relief accompanies. Here, all of Bean's requested declarations sound in contract law. Thus, viewed in a light most favorable to him, Bean's

---

[5] As is discussed more completely in this section, Declaratory relief cannot serve as an independent cause of action. However, because of the unique nature of declaratory relief, and because Bean characterizes it as such, this Court addresses Bean's request for relief in the same manner that Bean has pleaded it: Count V.

requests for declaratory judgments are properly chaperoned by underlying, recognized causes of action.

The Declaratory Judgments Act "provides a means for parties to have their rights, status and relations under existing written instruments judicially determined." *Thompson v. Glidden*, 445 A.2d 676, 678 (Me. 1982). The act is to be "liberally construed" in order to effectuate its purposes. *Id.*

Here, there are a number of justiciable controversies involving Bean and Spectrum that long for judicial intervention. Bean sufficiently pleads facts that indicate the parties would benefit from a judicial determination regarding his and Spectrum's rights, status and relations under the disputed terms of Bean's employment agreement and the deferred compensation plan. Accordingly, Bean's fifth count survives Spectrum's Motion as well.

## VI. 26 M.R.S. § 626

Bean's sixth count invokes 26 M.R.S. § 626 (2021) to obtain payment of any compensation he is entitled to under the deferred compensation plan. Specifically, Bean seeks the protection of Section 626's language that requires employers to pay a departing employee "in full no later than the employee's next established payday." Spectrum argues that Bean is not entitled to any amount of accounts receivable because any such entitlement is governed by the terms of the employment agreement only, which excludes Bean's deferred compensation plan. Moreover, Spectrum argues that even if Bean is entitled to these wages, he forfeited that entitlement by engaging in competitive activity in violation of the terms of the deferred compensation plan.

"Although section 626 creates a statutory right for former employees to seek payment, entitlement to payment is governed solely by the terms of the employment agreement." *Rowell v.*

15

*Jones & Vining, Inc.*, 524 A.2d 1208, 1210-11 (Me. 1987). "Therefore, pursuant to section 626, a former employee may only claim what is owed according to the terms of the employment agreement; section 626 does not modify or supersede its terms." *Richardson v. Winthrop*, 2009 ME 109, ¶ 7, 982 A.2d 400.

Considering the facts alleged in Bean's counterclaim and other documents central to Bean's claims, such as the employment agreement itself, *see Moody*, 2004 ME 20, ¶ 11, 843 A.2d 43, Bean has stated a colorable claim for payment of unpaid wages under 26 M.R.S. § 626. Section 11(g) of the Agreement entitles Bean to "Payment of Accrued Compensation" upon the termination of his employment. Additionally, as discussed *supra* at 7-8, Bean's engagement in activity competitive with Spectrum does not automatically forfeit his entitlement to deferred compensation. He has alleged facts that no such specific obligation was imposed upon him. Accordingly, viewing Bean's counterclaim in a light most favorable to him, he has set forth facts which establish a prima facie case under Section 626. Spectrum's Motion is denied as to Count VI.

## VII. Intentional Misrepresentation

Bean's seventh count of his counterclaim complains that Spectrum and its leadership intentionally misrepresented the amended terms of the goodwill buyout provision, causing him harm. Spectrum claims, for the same reasons as in Count IV above, that such alleged conduct does not state a prima facie case for intentional misrepresentation.

Claims of intentional misrepresentation and fraud require a prima facie showing of the same elements. *See Drilling and Blasting Rock Specialists, Inc. v. Rheaume*, 2016 ME 131, ¶¶ 16-18, 147 A.3d 824. Thus, to prevail on a claim for intentional misrepresentation, Bean must establish that (1) Spectrum made a false representation; (2) of a material fact; (3) with

knowledge of its falsity or in reckless disregard of whether it is true or false; (4) for the purpose of inducing Dr. Bean to act or refrain from acting in reliance on it; (5) Dr. Bean justifiably relied on the misrepresentation as true and acted upon it to his damage. *Sherbert v. Remmel,* 2006 ME 116, ¶ 4 n.3, 908 A.2d 622.

As discussed *supra* 11-12, Bean has sufficiently alleged that Spectrum's false representation regarding the applicability of the amended goodwill buyout provision to him has caused him damage. If, as Bean alleges, that representation induced him to stay beyond the first of the new year, thereby obligating him to pay $150,000 more than he otherwise would have, then he has properly alleged a claim for intentional misrepresentation. As such, Count VII survives Spectrum's Motion.

## VIII. Negligent Misrepresentation

Finally, the Court addresses Bean's final cause of action which alternatively pleads a claim of negligent misrepresentation. Similar to Spectrum's arguments regarding Bean's claims of fraud and intentional misrepresentation, they allege that Bean's allegations are conclusory in nature and have no merit.

The tort of negligent misrepresentation is committed when, one who, in the course of her business, profession or employment, or in any other transaction in which she has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if she fails to exercise reasonable care or competence in obtaining or communicating the information. *Rand v. Bath Iron Works Corp.,* 2003 ME 122, ¶ 13, 832 A.2d 771. Liability for negligent misrepresentation only attaches if, when communicating the

17

information, the defendant fails to exercise the care or competence of a reasonable person under like circumstances. *Id.*

Viewed in a light most favorable to Bean, this final count also survives Spectrum's Motion. With Bean alleging facts sufficient to meet the stringent elements of intentional misrepresentation and fraud, it is clear that he has also met the pleading requirements for a negligent misrepresentation claim. In the event that Spectrum did not make representations with knowledge of or reckless disregard for their falsity, Bean has sufficiently alleged that someone exercising the care and competence of a reasonable person under like circumstances would have not done so.

## CONCLUSION

For the foregoing reasons, Spectrum's Motion to Dismiss Bean's Counterclaim is Granted in Part and Denied in Part. After this Order, Counts I, II, IV, V, VI, VII, and VIII remain.

**Entry is:**

Motion to Dismiss is Denied in Part with respect to Count I. Any breach claims premised on the Employment Agreement or the Deferred Compensation Plan survive, but any theories of breach premised on the Letter of Intent are dismissed.

Motion to Dismiss is Denied as to Count II.

Motion to Dismiss is Granted as to Count III.

Motion to Dismiss is Denied as to Count IV.

Motion to Dismiss is Denied as to Count V.

Motion to Dismiss is Denied as to Count VI.

Motion to Dismiss is Denied as to Count VII.

18

Motion to Dismiss is Denied as to Count VIII.

Motion to Dismiss is Granted as to Count IX to the extent it pleads quantum meruit.

Any particular requests for relief will be addressed later.

The clerk is directed to incorporate this order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated:   3/31/22

_____
John O'Neil Jr.
Justice, Maine Superior Court

Entered on the Docket:  4/1/22